GRAHAM v. EVENING PRESS CO.

1. NEGLIGENT DRIVING—COLLISION WITH PEDESTRIAN—QUESTION
FOR JURY.

Where, in an action for injuries received by plaintiff while
attempting, in the early evening, to cross a street intersection
diagonally, by being struck by a vehicle approaching from
behind, there was testimony tending to show that she looked
in both directions before leaving the curb, at which time the
vehicle in question was 3 or 4 rods away, and that she had
gone about 20 feet when the collision occurred, the question
whether the driver was negligent either in not seeing plain-
tiff, or in failing to stop or avoid her, was for the jury.

2. SAME—CONTRIBUTORY NEGLIGENCE.

Whether plaintiff was guilty of contributory negligence in not
looking behind her after leaving the curb was likewise a
question for the jury.

Error to Kent; Wolcott, J. Submitted November 20,
1903. (Docket No. 160.) Decided December 22, 1903.

Case by Sarah Graham against the Evening Press
Company for personal injuries. From a judgment for
plaintiff, defendant brings error. Affirmed.

*T. J. O'Brien* and *James H. Campbell*, for appellant.

*Lombard & Hext*, for appellee.

MONTGOMERY, J. This is an action for negligent
injury. The plaintiff, a woman 74 years old, attempted to
cross diagonally from the southeast corner to the northwest
corner of Ionia and Pearl streets, in the city of Grand Rapids,
about 6 o'clock p. m. of the 17th of October, 1901. While in
the act of crossing, she was struck by a horse owned by de-
fendant and driven by its employé, one Harry C. Stewart.
Plaintiff sustained substantial injuries, and on the trial
recovered a verdict of $250. Defendant brings error.

It is contended that there was no evidence of negligence on the part of the driver. The driver was made a witness for the plaintiff, and possibly, although we do not so decide, if his testimony as a whole be taken as an accurate statement of the incident, there was no negligence on his part. But the plaintiff adduced other testimony. She herself testified that, before she stepped off the sidewalk into the paved portion of the street, she looked in either direction, and saw no teams approaching in either direction sufficiently near to arrest her attention or cause concern for her safety. The driver testified that, at the time plaintiff left the curb, he was about a rod away; that the collision occurred when she had traveled about 20 feet from the curb; and that he was jogging along at a fair rate of speed. He further testified as follows:

" *Q.* You said just a minute ago you were within 3 feet of the curb?

" *A.* Yes, sir.

" *Q.* From the same curb she stepped off of?

" *A.* Yes, sir.

" *Q.* Now, did you immediately turn your horse west?

" *A.* Not at once; no, sir.

" *Q.* Why didn't you?

" *A.* Why, because I thought probably, if she continued on, I could go behind her.

" *Q.* Well, she did keep on, didn't she?

" *A.* Yes.

" *Q.* You could have stopped your horse, if you had tried, when you first saw her?

" *A.* No, sir.

" *Q.* Why could you not?

" *A.* Too heavy.

" *Q.* Too heavy?

" *A.* Yes, you could not stop so quick.

" *Q.* When did you first try to stop?

" *A.* As soon as I saw her, I commenced to pull up.

" *Q.* If you had turned to the west, you would not have struck her, would you?

" *A.* You could not turn a horse as quick as that.

" *Q.* You say, in your judgment, she was 20 feet out into the street. How wide is your rig?

" *A.* I don't know.

" *Q.* About 5 feet, isn't it ?

" *A.* All of that.

" *Q.* You had space between her and 20 feet to get through, didn't you ?

" *A.* No, sir.

" *Q.* Why ?

" *A.* Because I was at the same point she was at the end of that 20 feet.

" *Q.* But if you had gone the other way, if you had started in behind her, in fact had gone either side, you would have escaped her, wouldn't you ?

" *A.* Yes, of course.

" *Q.* You had a chance to have done either ?

" *A.* No, sir.

" *Q.* Explain to the jury why you didn't have a chance to go either side ?

" *A.* Why, there wasn't time; neither time nor room.

" *Q.* There wasn't time ?

" *A.* No, sir.

" *Q.* There would have been if you had started to turn your horse as soon as you saw her, wouldn't there ? How about that ?

" *A.* There might have been, yes.

" *Mr. Lombard:* That is all.

" *A.* But I doubt it."

Edgar Rice, a witness for plaintiff, testified as follows:

"When I first saw her, she was on the southeast corner; on the corner, standing there looking up and down the street. And one particular thing that called my attention to it at the time, she seemed to me like a lady that didn't really know where she was going, or else looking to see if there was anything coming down the street either way. At the time I noticed her, I saw a team down the street, I should think three or four rods to the south of her. It was the Evening Press wagon. While I was looking, she was looking up and down the street in different directions, and then started directly across the street, or diagonally across toward the Y. M. C. A. building.

" *Q.* At the time she started across she street, you may state if you observed how far up the street this team was.

" *A.* I should think the team was between three and four rods from the corner.

" *Q.* What did you next observe?

"*A.* The next that I observed was—the next I saw was—when the wagon was practically upon this lady. It was not over six feet the second time I noticed it.

" *Q.* I will ask you whether you continued to observe that all the time, from the time you first saw that or not?

"*A.* No, sir; I just noticed her when she was leaving the walk, and I did not think any more of it until I looked up and saw the wagon upon her.   *   *   *

" *Q.* Now, will you describe to the jury just what you saw then?

" *A.* Do you mean at the second time I looked up?

" *Q.* The second time you saw it.

" *A.* The second time I looked up I saw the horse, as I should judge, about five or six feet from this lady, and I saw immediately what was going to happen, but at the same time was not in any way to prevent it.

" *By Mr. O'Brien:* Suppose you state just what you saw, without any reasons.

" *Mr. Campbell:* That remark ought to be stricken out, his impression at the time. I move to strike out the first statement,—what he saw and what he thought.

" *The Court:* What he thought may be stricken out; the statement of what he saw may remain.

" *A.* And the driver turned his horse to the west just about the time that it struck this lady, and she fell to the northeast, which would be in that direction, and struck on her right side; and the driver pulled his horse in as soon as he could, but he had gone about 15 feet beyond before he got the horse brought to a standstill. I ran there as soon as I could get there, and helped to pick her up. The driver got down off the wagon, and I think he was the one that assisted in picking her up. When I got to her she was on the pavement."

The testimony of this witness disputes that of the driver in another respect. The testimony of the latter is to the effect that the horse came to a stop at the instant of the collision, which is inconsistent with that of Mr. Rice above quoted.

From this testimony it was competent for the jury to deduce that plaintiff, seeing no vehicle near, started to cross the street in plain view of the driver; that the vehicle driven by defendant's servant, traveling in substantially the same direction, approached her from behind;

and that, after she had pursued her course for about 20 feet, she was struck and injured.   It seems too plain to call for extended remark that the jury might infer from these facts that the driver was in fault either in not seeing the plaintiff in this position, or in failing to either stop the horse or veer away from plaintiff's course.   If these facts do not present a case for the jury, it must be held that a public thoroughfare is, under all circumstances, indeed a place of danger.   The cases of *Boick* v. *Bissell*, 80 Mich. 260 (45 N. W. 55), and *Lazell* v. *Kapp*, 83 Mich. 36 (46 N. W. 1028), are in point.

Defendant's counsel cite *Denman* v. *Johnston*, 85 Mich. 387 (48 N. W. 565), as sustaining their contention. The case cited bears some analogy in its facts to the present, but we find no question of law there determined which concludes the present plaintiff.   The decisive holding in that case was that the plaintiff's claim of gross negligence was not competent under the pleadings as they stood. The court held that it was not error to refuse to direct a verdict at the close of the plaintiff's proofs, for the reason that the defendant had not rested when the motion was made; and in the course of the opinion stated:

" The [trial] court, in his charge to the jury, instructed them correctly upon the rights and duties of travelers in a public highway, and also upon the respective theories of the parties as presented in the case by their testimony, and left the questions of fact to the jury as they should find they were established by the testimony."

In discussing the question of *gross* negligence, CHAMPLIN, C. J., said:

"No witness testifies that defendant saw plaintiff in a place of danger, and that he knew, or had good reason to believe, that plaintiff was not aware of the danger, or that defendant saw plaintiff in time to avoid injuring him by the exercise of ordinary care.   *   *   *   The neglect of defendant to see the plaintiff was no greater than that of the plaintiff to see the team approaching.   In my opinion, neither of them was guilty of such a degree of negligence as to excuse the negligence of the other."

This language was very evidently employed in answer to the plaintiff's contention that the defendant would be liable even though the jury might find plaintiff guilty of negligence in attempting to cross the street ahead of defendant's team, for the reason that defendant discovered plaintiff's negligence in time to avoid the injury. It could not have been intended to hold that there was no evidence of care on plaintiff's part under circumstances similar to the present. That question was not under discussion at that point in the opinion.

The question of defendant's negligence was properly submitted to the jury.

Defendant's counsel also contended in the court below, and contend here, that, as plaintiff did not look in the direction from which defendant's vehicle approached after leaving the curb, the jury should have been instructed that she was guilty of contributory negligence as matter of law. This is not the case of a traveler being injured by a street or steam railway, but a traveler in the public street is overtaken, run down, and injured. We are cited to no case, and know of none, which casts upon a pedestrian traveling the street the duty of keeping a constant lookout to the rear as matter of law. The question of what constitutes due care in such a case is for the jury. See cases cited above, and also an instructive discussion of this subject by Folger, J., in *Adolph* v. *Railroad Co.*, 76 N. Y. 530; Elliott, Roads & S. §§ 833, 834; *Moebus* v. *Herrmann*, 108 N. Y. 349 (15 N. E. 415, 2 Am. St. Rep. 440); *Williams* v. *Grealy*, 112 Mass. 79; *Shapleigh* v. *Wyman*, 134 Mass. 118; *Stringer* v. *Frost*, 116 Ind. 477 (19 N. E. 331, 2 L. R. A. 614, 9 Am. St. Rep. 875).

It is contended that it was error to refuse five requests which are grouped in the brief of defendant's counsel, the sole statement being: "These requests should have been given. If they had been, it would have left nothing relating to the negligence of the driver to be submitted to the jury." The discussion above shows that this but furnishes a good reason for the refusal of the requests, for we have

attempted to demonstrate that the question of the driver's negligence was properly submitted to the jury. The instructions of the circuit judge were in accordance with the views herein expressed.

The judgment is affirmed.

MOORE, CARPENTER, and GRANT, JJ., concurred. HOOKER, C. J., took no part in the decision.