ANNIE IRWIN *vs.* FRANKLIN JUDGE.

Third Judicial District, Bridgeport, October Term, 1908.
BALDWIN, C. J., HALL, PRENTICE, THAYER and RORABACK, Js.

The proper way to take advantage of the rule of pleading which requires an act done by a known agent of an individual to be so stated (Practice Book, p. 244, § 144), is to object to proof that the act was done by the agent unless it is so alleged.

One who entrusts the running and management of his automobile to another as his chauffeur is responsible for the latter's negligence while so acting, although the chauffeur was regularly employed and paid by a third person.

The plaintiff while riding a bicycle was injured in a collision with the defendant's automobile, the alleged cause of which was the failure of the defendant to seasonably turn to the right as the parties approached each other, and the high rate of speed at which the car was running at the time. *Held:*—

1. That the trial court correctly charged the jury that the statute in force at the time of the accident (1906) made it the duty of the defendant, when he met the plaintiff, to slacken his speed, if necessary, and to seasonably turn to the right so as to give her one half of the traveled path, if practicable, and a fair and equal opportunity to pass.

2. That such instruction was not open to the criticism that it placed the entire burden of avoiding the collision upon the defendant, since the court had already defined the duties of the plaintiff and told the jury that she could not recover if the accident was caused by her failure to perform them.

Irwin *v.* Judge.

The statute (Public Acts of 1905, Chap. 216, § 2) does not prohibit one from traveling upon the left-hand side of the road, but does require him to turn to the right upon meeting a person or team.

The parties were at issue as to the position of the defendant at the time of the collision, the plaintiff claiming that the defendant, instead of turning from one street into the other in the manner required by the statute (Public Acts of 1905, Chap. 216, § 2), had "cut the corner" and was on the wrong side of the road, while the defendant insisted that he was proceeding slowly and properly when he was run into by the plaintiff. In reference to that question the trial court instructed the jury that if the defendant was needlessly on "the left-hand side" or on "the wrong side" of the street he was negligent in that particular. *Held* that as applicable to the claims of the parties, this instruction was correct and sufficient for the guidance of the jury.

The Act of 1905, in fixing a maximum rate of twelve miles an hour for motor vehicles in city streets, did not purport to establish that as a lawful rate under all circumstances. Whatever the rate, the owner or operator would be liable in damages, if the speed was greater than was reasonable and proper in view of the width, traffic and use of the highway, or was such as to endanger property or the life or limb of any person.

Driving an automobile at a high rate of speed through city streets, where other vehicles are constantly passing, and men, women, and children are liable to be crossing, or around corners at the intersection of streets, or in passing by street-cars from which passengers have just alighted or may be about to alight, or in other similar places and situations where people are liable to fail to observe an approaching automobile, is in itself actionable negligence. One operating an automobile under such circumstances is bound to take notice of the peculiar danger of collisions in such places. He cannot secure immunity from liability by merely sounding his automobile horn.

Argued November 17th, 1908—decided January 6th, 1909.

ACTION to recover damages for personal injuries alleged to have been caused by the defendant's negligence, brought to the Court of Common Pleas in Fairfield County and tried to the jury before *Scott, J.;* verdict and judgment for the plaintiff for $500, and appeal by the defendant. *No error.*

*J. Belden Hurlbutt,* for the appellant (defendant).

*James T. Hubbell,* for the appellee (plaintiff).

HALL, J. The plaintiff, who at the time of the accident by which she was injured was sixteen years of age, brings this action by her next friend, alleging in her complaint that on the 1st day of August, 1906, at about six o'clock in the afternoon, when she was going southerly down North Main Street, on the right-hand side of the street, in the city of South Norwalk, riding a bicycle at a moderate rate of speed, she was, at a described point, run into and injured by an autocar going northerly on the left-hand side of the road, which was driven by the defendant at a high rate of speed; and that the accident was caused by the defendant's negligence in being on the wrong side of the street, and in running his car at so high a rate of speed that it was beyond his control.

Main Street in the city of South Norwalk runs north and south. Washington Street, running east and west, crosses it at a central point of the travel and traffic of the city. On the map, made a part of the record, the portions of Main Street north and south of the Washington Street crossing are designated, respectively, North and South Main Street, and those of Washington Street east and west of said crossing, East and West Washington Street. There are trolley-tracks near the middle lines of each of said streets.

On the 1st of August, 1906, the defendant, in his automobile, was riding easterly on West Washington Street, intending to turn up North Main Street. His machine was operated by one Caldwell, who commenced working as a chauffeur about two weeks before that time. The plaintiff was riding a bicycle on North Main Street, going southerly, and intending to turn down East Washington Street. The collision occurred north of the Washington Street crossing.

There was a conflict of testimony as to the precise point where the collision occurred, and also regarding the exact direction in which the plaintiff was going, and the speed of the automobile and the direction in which it was going.

The plaintiff claimed that while going southerly on North Main Street, as she approached the Washington Street crossing, she was riding her wheel on the west side of the street and just west of the trolley-tracks on North Main Street, and that the automobile, coming from West Washington Street, turned northerly and came rapidly up the west side of North Main Street and ran into her wheel, and threw her off as she was about to cross the trolley-track to go over to East Washington Street. The defendant claimed that when, going easterly along West Washington Street, he reached the Main Street crossing, he, at a slow rate of speed, crossed to the east side of North Main Street, and, when his automobile had stopped or nearly stopped, the plaintiff, who had crossed or was crossing to the east side of North Main Street, ran into the automobile.

In his appeal to this court the defendant complains: (1) that the damages awarded are excessive; (2) that the trial court erred in denying the defendant's motion to set aside the verdict as against the evidence; and (3) that it erred in refusing certain requests to charge, and in giving certain instructions to the jury.

The claim that the damages awarded are excessive is not pursued by the defendant.

Regarding the second point, it would be unprofitable to repeat here the evidence which we deem sufficient to support the verdict rendered. It is enough to say of this claim, that an examination of the evidence satisfies us that the trial judge correctly stated, in his memorandum of decision, that "upon the conflicting evidence presented, the jury might have found in favor of either party."

Those of the alleged errors in refusing to charge as requested, which require notice, are sufficiently considered in discussing the exceptions to the charge itself.

First, regarding the charge, error is predicated upon the statement of the court to the jury, that the defendant was "liable for the management of his car by Caldwell, upon the

Irwin *v.* Judge.

undisputed relations which existed between them." This statement was clearly warranted. Although it appeared that Caldwell was in the employ and pay of another person than the defendant, it was undisputed that at the time of the accident he was, and for some weeks before had been, entrusted by the defendant with the running and management of his car, as chauffeurs ordinarily are by owners of automobiles. He seems to have differed from the ordinary chauffeur only in his inexperience. The defendant testified that Caldwell was taking care of his, the defendant's, car and running it, and that he, the defendant, was teaching him how to run it. Caldwell's testimony was to the same effect. The defendant further testified on cross-examination that he did not claim that he was not responsible for what occurred because he was not running the car. The proper way to have raised the question of whether, under the rule of pleading (Practice Book, 1908, p. 244, § 144), the plaintiff should have alleged that the automobile was driven by the defendant by his agent Caldwell, would have been to object to proof that it was so driven.

Among the other statements made in the charge, to which the defendant takes exception in his reasons of appeal, are the following:—

2. "The statute law of the State in force at the time of this accident made it the duty of the defendant, when he met the plaintiff, to slacken his speed if necessary, and to seasonably turn to the right so as to give her one half of the traveled path, if practicable, and a fair and equal opportunity to pass. 3. . . . . If you find that he [the defendant] was on the left-hand side of the street when the collision occurred, he failed to perform a duty which he owed by positive statute law to the plaintiff, and you should find him negligent in that one of the respects alleged in the complaint, unless you find that he was coming into a side street from an intersecting street and had not had time to get over to the right-hand side of the street. . . . . 4. When a

collision occurs the fact that a person is on the wrong side of the road is prima facie evidence of negligence. 5. But if you find that he [the defendant] was driving at a high rate of speed at that time, then you must find that such act in itself was unlawful, and was therefore a negligent act. 6. No matter how great the rate of speed allowed by law, the operator still remains bound to anticipate that he may meet persons or vehicles on a public street, and he must keep his machine under such control as will enable him to avoid a collision."

The statute law thus referred to in the charge, and in force at the time of the accident, provides that when a person driving or operating a vehicle in a highway (and the word "vehicle" by the language of the statute is made to include both automobiles and bicycles) "shall meet another person . . . thus driving or operating a vehicle, if such persons are moving in opposite directions each shall slacken his pace, if necessary, and seasonably turn to the right so as to give half of the traveled road, if practicable, and a fair and equal opportunity to pass, to the other . . . ;" and that "any such person shall, at the intersection of public highways, keep to the right of the intersection of the centers of such highways when turning to the right, and pass to the right of such intersection when turning to the left," and that every person who by neglecting to conform to such rule shall "cause any injury to the person or property of another, or shall negligently collide with another, . . . shall pay to the party injured treble damages and costs," and that if the owner of such vehicle shall entrust it to his "agent, servant, or employee," to be operated by him upon the highway, and such agent, servant, or employee "while in the execution of such owner's business within the scope of his authority," shall, by neglecting to conform to such rule, cause injury to another's property, or negligently collide with him, such owner shall pay the injured party his actual damages and costs. The Act also imposes a punish-

ment by fine for the violation of certain of its provisions. Public Acts of 1905, p. 412, Chap. 216.

Sections 10, 11 and 14 of chapter 230 of the Public Acts of 1905, pp. 426, 427, further provide that no person shall "operate a motor vehicle on the public highways of this state at a rate of speed greater than is reasonable and proper, having regard to the width, traffic, and use of the highway, or so as to endanger property or the life or limb of any person, or, in any event, within the limits of any city or borough at a greater rate of speed than one mile in five minutes," and that upon approaching "a crossing of intersecting public highways . . . the person operating a motor vehicle shall have the same under control and shall reduce its speed"; and impose a penalty by fine and imprisonment for the violation of said provisions. The provisions of the two chapters cited are intended to regulate the conduct of persons moving in the traveled portion of a public highway, in passing each other: when going in opposite directions; when going in the same direction; and when approaching the crossings of intersecting highways.

The ground of the present action is the alleged failure of the defendant to seasonably turn to the right, when he and the plaintiff approached each other, moving in opposite directions on North Main Street, and the driving of his car by the defendant at a high rate of speed at the time of the collision. The complaint contains no reference to any intersection of streets, or to any misconduct of the defendant upon approaching a crossing.

The second quoted paragraph of the charge correctly stated the duty of the defendant as fixed by the statute. It is not open to the criticism that it placed the entire burden of avoiding the collision upon the defendant. The court had already defined the duties of the plaintiff, practically as requested by the defendant, and had instructed the jury that she could not recover if the accident was caused by her failure to perform them.

The defendant complains of the language of said paragraphs 3 and 4 of the charge, upon the ground that it erroneously holds that one may not lawfully travel upon the left-hand side of the road, and, further, that the jury were not properly informed what was meant by the wrong side of the road.

The trial judge had previously charged the jury, just as the defendant had requested, that the law did not require a person to travel on his right-hand side of the road, but did require him to turn to his right upon meeting a person or team. The remarks of the court in these paragraphs, concerning the "left-hand side of the street" and on the "wrong side of the road," were expressly confined to the position of the defendant *at the time of the collision.* If the collision occurred at the place and in the manner claimed by the defendant, the jury could not, under the instructions given, have found that he was on the wrong side of the road. If it occurred at the point where the plaintiff and some of her witnesses testified it did, the defendant was on his left-hand side, that is, the west side of the middle line of North Main Street, and therefore did not give to the plaintiff that part of the traveled road which the statute required him to give her, if practicable. That it was practicable to give her "half of the traveled road . . . and a fair and equal opportunity to pass" is unquestioned. The court told the jury that it was "agreed that the street was wide enough for both parties to have passed, and that there was no obstruction that made it impracticable for the defendant to give the plaintiff one half of the traveled path." If the defendant turned from West Washington Street sharply to the left-hand or west side of North Main Street, as the jury evidently found he did, he failed to perform a duty which the law clearly imposed upon him, and he was therefore guilty of negligence. If such violation of duty was one of the causes of the plaintiff's injury, as under the charge of the trial judge we think the jury must have

found it was, that negligence was clearly actionable negligence.

As we understand the defendant's objections to paragraphs 5 and 6 of the charge, they are that the trial judge failed to inform the jury what was meant by a high rate of speed, and also erroneously instructed the jury that driving the automobile at a high rate of speed was in itself negligence.

In other parts of the charge the trial judge sufficiently defined a high rate of speed by saying, in effect, that it was an unreasonable one, considering the time and place, and one which prevented the defendant from controlling his machine so as to avoid the collision, even though it was less than the maximum statutory rate within the limits of a city. These instructions were correct. In fixing the maximum rate within a city at twelve miles an hour, the statute does not purport to establish a rate of speed which will be lawful under all circumstances. To operate an automobile within the limits of a city at a greater rate of speed than one mile in five minutes was made a criminal offense under the law of 1905. To operate one upon a highway, either within or without the limits of a city, even at a less speed than that, was a violation of the express terms of the Act of 1905, and was in itself such negligence as would render one liable civilly for injuries caused by a high rate of speed, provided that rate was greater than was "reasonable and proper, having regard to the width, traffic, and use of the highway," or was such "as to endanger property or the life or limb of any person." The charge of the trial judge, that a rapid rate of speed by the defendant was in itself negligence, must be considered in connection with the facts to which it was intended to apply, and which the jury evidently found proven, namely, that the defendant had not at the time of the collision passed over, as he claimed he had, to the right-hand or east side of North Main Street, and that he was not on the left or west side only because, in coming

from an intersecting street, he had not had sufficient time to pass over to the right or east side of North Main Street. As applicable to the evidence before the trial court, the instruction given was clearly correct.

To persons riding along or crossing our public roads, and especially our city streets, the rapidly moving automobile is a constant source of danger. Their great weight, speed power, and resulting momentum, render the consequences of a collision with them much more serious than with ordinary carriages moving at even a higher rate of speed, and it is much more difficult to avoid, and much more confusing to attempt to avoid, the rapidly moving automobile than the street-railway car, which has a fixed and known direction and course upon its tracks. While owners of automobiles have the right to drive them upon public streets, yet the proper protection of the equal rights of all to use the highways, necessarily requires the adoption of different regulations for the different methods of such use; and what may be a safe rate of speed at which to ride a bicycle or drive a horse, may be an unreasonably rapid rate at which to drive an automobile in the same place. For the reason stated, and others which might be given, the driving of an automobile at a high rate of speed through city streets, at times when and places where other vehicles are constantly passing, and men, women and children are liable to be crossing; or around corners at the intersection of streets; or in passing by street-cars from which passengers have just alighted or may be about to alight; or in other similar places and situations where people are liable to fail to observe an approaching automobile, is in itself actionable negligence. One operating an automobile under such circumstances is bound to take notice of the peculiar danger of collisions in such places. He cannot secure immunity from liability by merely sounding his automobile horn.. He must run his car only at such speed as will enable him to timely stop it to avoid collisions. If he fails to do so, he is responsible for

the damage he thereby causes. *Buscher* v. *New York Transportation Co.*, 106 N. Y. App. Div. 493, 94 N. Y. Supp. 798; *Thies* v. *Thomas*, 77 N. Y. Supp. 276; *Kathmeyer* v. *Mehl*, 60 Atl. (N. J.) 40; *McIntyre* v. *Orner*, 166 Ind. 57, 76 N. E. 750.

There is no error.

In this opinion the other judges concurred.