SCHOCK *v.* COOLING.

1. DAMAGES—NEGLIGENCE OF PLAINTIFF AGGRAVATING INJURIES.
Where the evidence disclosed that plaintiff went to a physician immediately after being struck by an automobile and submitted to an examination, that the physician bandaged his injured foot and ankle, which caused plaintiff much pain, that he complained that the physician hurt him in handling it and did not permit a thorough examination, but submitted to further treatment by another physician next day, the evidence did not show conclusively that plaintiff aggravated his injuries by refusing to submit to proper treatment so as to be responsible for the results.

2. SAME—EXCESSIVE VERDICT.

Damages of $1,000 for broken bones in plaintiff's ankle, a bruised and swollen leg, ruptured ligaments, etc., resulting in severe pain and lameness, which witnesses testified was likely to last for a considerable time, *held*, not to be excessive.

3. AUTOMOBILES — NEGLIGENCE — WARNING — HIGHWAYS AND STREETS.

Testimony that defendant drove his automobile at an excessive rate of speed when he struck plaintiff, that he failed to give warning, that he saw plaintiff ahead of him crossing the highway between two rigs with his back to defendant, apparently hesitating as if confused, that one of the standing horses was restless and excited, that he could have stopped his car instantly, but turning to avoid plaintiff drove between the vehicles and struck and injured plaintiff while driving at a speed of five miles an hour or upwards, according to differing testimony of witnesses for both parties, presented a question for the jury as to defendant's negligence.[1]

4. SAME.

It was negligence for the driver of an automobile, having ample space in which to pass a pedestrian on the highway, to so guide the car as to strike him.

5. SAME—CONTRIBUTORY NEGLIGENCE.

Plaintiff's negligence, which defendant claimed was the proximate cause of the injury, was for the jury.

6. SAME—EVIDENCE—LIGHTS—INSTRUCTIONS TO JURY.

It was not error to admit testimony that other automobiles, prior to the time of plaintiff's injury on the evening in question, had lighted lamps, in support of plaintiff's contention that defendant was running without lights more than an hour after sunset; the purpose of the testimony being properly restricted by the judge in his charge and

[1] The authorities on the question of the reciprocal duty of operator of automobile and pedestrian to use care are reviewed in notes in 38 L. R. A. (N. S.) 487 and 42 L. R. A. (N. S.) 1178.

As to the duty and liability of person operating automobile on public street or highway, see note in 4 L. R. A. (N. S.) 1130. And upon the duty of operator of automobile to stop in order to avoid collision with pedestrian, see note in 24 L. R. A. (N. S.) 557.

On the question of the duty of a pedestrian to look out for auto cars, see notes in 3 L. R. A. (N. S.) 345 and 20 L. R. A. (N. S.) 232.

the jury being advised that it was not to afford a test
of the duty of the defendant.

7. EVIDENCE—PERMANENT INJURIES—EXPERT TESTIMONY.

No error was committed by plaintiff's attorney in ask-
ing a medical witness whether the injury to plaintiff's
ankle was permanent or not, where the physician replied
that he could not tell, and did not know how long before
it would be well.

8. SAME—EXCLAMATIONS—PAIN AND SUFFERING.

Exclamations of pain and manifestations of suffering be-
fore the commencement of suit, not made in anticipation
of litigation, were not objectionable as evidence of pain
and suffering.

Error to Shiawassee; Miner, J. Submitted January
22, 1913. (Docket No. 61.) Decided May 28, 1913.

Case by Ira Schock against Thomas Cooling for per-
sonal injuries. Judgment for plaintiff. Defendant
brings error. Affirmed.

*A. L. Chandler* and *George E. Pardee,* for appellant.

*B. F. Reed (George B. Andrews,* of counsel), for
appellee.

STEERE, C. J. In this case plaintiff recovered a
verdict and judgment against defendant in the circuit
court of Shiawassee county for the sum of $1,000 as
compensation for injuries inflicted by an automobile
defendant was driving.

Plaintiff's declaration contains three counts, each
making the same general charge that an automobile
negligently driven by defendant struck the plaintiff
while he was walking in a highway, and seriously in-
jured him. The first count declares under the statute
(Act No. 318, Pub. Acts 1909, 2 How. Stat. [2d Ed.]
§ 2487 *et seq.*), charging excessive rate of speed,
failure to give warning, failure to display lights on
defendant's automobile at a time exceeding one hour

after sunset, failure to use reasonable precautions to insure safety of others, etc. The second count charges common-law negligence in recklessly driving at an excessive and dangerous rate of speed, in a careless manner and without due regard to the safety of others. The third count is of like import, cast in the ordinary form of declaration in trespass. Defendant's plea is the general issue.

It is undisputed that on the evening of August 31, 1911, the plaintiff, a farmer 57 years of age, while walking across a public highway that led northerly from the village of Vernon (Shiawassee county), at a point from 20 to 30 rods north of what is known as the Webb creek bridge, was struck and injured by defendant's automobile; the nature and extent of his injuries, however, being a matter in dispute. It is undisputed that no lights were displayed on defendant's automobile at the time of the accident and that the sun set that evening at 6:38. The time at which the accident occurred, the condition of light or darkness, the rate of speed of the automobile, whether warning of approach was given, the general management of the machine, conduct and movement of the parties, and the exact nature and manner of the accident, are all matters more or less in dispute.

It appears from the testimony introduced by plaintiff that on the morning of the day in question plaintiff, who lived near the city of Lapeer, went from there by rail to the village of Vernon for the purpose of attending a family reunion at the home of a cousin, William Pearson, who lived about four miles north of said village, and spent the day with his relatives. Towards evening, when the gathering broke up and the guests departed, Pearson and his wife took several of them, who had come from a distance, to Vernon to take the train for their homes. The conveyances did not all leave the Pearson home at the same time. The last conveyance to leave was a farm wagon containing

a guest named Jeffrey, sitting behind, and plaintiff sitting on the front seat with Pearson, who was driving. Pearson's wife had driven away some little time before with a horse and buggy, taking a guest to the station, and a conveyance containing two of the guests named Johnson and Patterson preceded the one in which the plaintiff was riding but a short time. All drove south along the highway leading directly from Pearson's home to Vernon. When the conveyance in which plaintiff was riding reached the point where the accident in question subsequently occurred, they met Mrs. Pearson returning from Vernon alone in the single buggy with the top down; and the two conveyances halted opposite each other, or nearly so, as they were about to pass, some little distance apart on each side of the driven way, and after a brief conference it was arranged that Mrs. Pearson should turn about with her buggy and take plaintiff and Jeffrey to Vernon while her husband with his heavy lumber wagon returned home to attend to his chores. This necessitated each conveyance turning around to go in the opposite direction from which it had been previously traveling. Before this was attempted plaintiff, who was seated beside Pearson in the front of the wagon and nearest to the buggy, alighted and proceeded to cross the road to the buggy. Jeffrey, who was in the rear of the wagon, also alighted and crossed the road to the head of the horse driven by Mrs. Pearson, taking hold of a line or bridle so as to lead the animal around in turning. There is some conflict of testimony as to which crossed first and the exact direction of their crossing.

At this time Mrs. Pearson's buggy stood with its hind wheels opposite or a little beyond the rear of the lumber wagon and on the grass at the side of the road, the lumber wagon being on the opposite side of the traveled way, leaving a space of from 12 to 20 feet between them, and plaintiff proceeded from where he

alighted in a northeasterly direction diagonally across the road towards the buggy. According to the testimony of plaintiff's witnesses, none of them at this time had any knowledge of the approach of an automobile, except Pearson, who was in his wagon facing to the south. He testified that he first noticed the automobile approaching when about three rods away, making a noise the same as other automobiles do in running; that he called out that there was an automobile coming, but does not know whether plaintiff heard him; and that within an instant after he called the automobile was between him and plaintiff. Plaintiff testified that when he started across the road he did not see or hear any automobile, and that he walked in a natural gait in a "kittering" direction, and when near the east wheel track of the beaten way he was suddenly struck on the right ankle by something and thrown to the ground, the instant thought occurring to him that an automobile had struck him; that he was then within four or five feet of the buggy and fell towards the north, having been hit by the hind wheel of the automobile, which struck the back of his leg and ran over his ankle.

The testimony of plaintiff and his witnesses tended to show that it was dark, or nearly so, at that time, some saying it was dusk and that the natural darkness was somewhat increased by dust in the atmosphere, so that objects could not be readily distinguished at any great distance; that defendant's automobile was moving at a high rate of speed, estimated by some at 15 miles an hour, and came up suddenly from the south, without sounding the horn or giving any warning to plaintiff, who was walking diagonally across the highway and then near the easterly edge of the beaten road with his face turned toward the north, passing so close to him that the rear wheel struck the lower part of his right leg or ankle a glancing blow, knocking him

down, fracturing the bones of his leg, and otherwise seriously injuring him.

The defendant is a farmer residing south of the village of Vernon, and on the evening in question, accompanied by his wife, was taking his son and his son's wife with their two children to the city of Owosso in a Ford Model T automobile owned by defendant.

It is the testimony of defendant and others who were with him that they left his home about sundown, and that the distance from where they started to the place of the accident is from 3½ to 3¾ miles. It took but from 12 to 18 minutes to drive that distance, and they arrived at the place of the accident not more than 18 minutes after sunset; it being yet broad daylight. The road had recently been covered with gravel six or eight inches deep for 15 or 16 rods north of the bridge, and from the bridge north there is a descent for a distance of 12 to 18 rods, then a slight rise, after which it is level to the place of the accident. Defendant shut the throttle of his engine when he got upon the bridge and ran with it closed until the accident; the speed gradually diminishing from about ten miles per hour at the bridge to five or six when the accident occurred. The bridge is 55 feet long, and in crossing it the machine caused the planks to rattle and make a loud noise. Observing the parties stopped in the road ahead of him defendant sounded his horn several times as he approached them and slowed down his machine. The two rigs were at first in the middle of the road, but after he "tooted" his horn they began to separate and were apart from 12 to 20 feet at the time he reached them. When five or six rods away he first noticed plaintiff as he was coming out from behind Pearson's wagon and starting across the road, at which time defendant tooted his horn once, but plaintiff paid no attention to it, and when within about 15 feet of him, noticing that he was in a position of

danger, defendant called out to him three times to "look out" and swung the car to the left far enough to safely pass behind him, and would have done so had he stood still or continued walking ahead. Defendant supposed he had passed safely until his wife drew his attention to the matter, when he looked round and immediately stopped.

While there is some confusion as to the details, the lengthy testimony of defendant and his witnesses is to the effect, briefly stated, that they saw plaintiff in the road as they were approaching some distance ahead as he moved away from Pearson's wagon to cross the road; that the horn was sounded but he did not seem to hear it, and when the automobile was within 10 to 20 feet of him he was directly in its path in the road, in a position of danger if he remained there, and the automobile continued on; that he seemed to be slightly hesitating and confused, and defendant shouted at him as they came closer, running not over five or six miles an hour; that ample notice had been given of their approach. It was daylight and the car was under complete control. As the car came near to plaintiff, defendant steered it in a gradual curve to the left sufficient to pass plaintiff safely, and did pass him, so far as then appeared, until he stepped backward just at that instant far enough for the rear wheel to strike his foot or ankle and inflict the injury complained of, which is imputable entirely to his own negligence and not that of defendant.

Defendant's numerous assignments of error are concentrated into the following reasons why the judgment should be reversed and a new trial granted:

(1) The verdict is contrary to the overwhelming weight of evidence.

(2) That the defendant was guilty of no conduct constituting actionable negligence.

(3) That the plaintiff was guilty of contributory negligence precluding a recovery.

(4) That the court erred in admitting and excluding certain testimony, in certain parts of his charge, and in refusing defendant a new trial.

(5) That the damages are excessive in amount.

The claim that, if the case was in any aspect to be submitted to the jury, excessive damages· were awarded is based on the contention that all the pain, suffering, and ill effects resulting from the injury were caused by plaintiff's refusal to permit a physician at Vernon to properly attend to him and administer first aid; and the testimony of witnesses that he was able to walk on the limb shortly after the accident, that he was seen to get out of the buggy and walk when he arrived at Vernon that evening, and the testimony of a physician, called by defendant, that there had not been any fracture, that an examination failed to disclose any callous, such as fractures cause, that it looked to him as if plaintiff had suffered a "sprain of the ankle," that he did not regard the injury as permanent, and that the treatment, or neglect of treatment, shown by certain of the evidence was injurious, would increase the pain and suffering and retard recovery. The evidence discloses that immediately after the accident plaintiff was taken to a physician at Vernon where his limb was hastily examined and bandaged, but he was suffering and claimed that the physician hurt him unduly in handling the limb, and did not permit a very thorough examination. The testimony on that subject falls far short of showing conclusively that plaintiff aggravated his injuries by refusing to submit to proper treatment and is himself responsible for the suffering and ill effects of the injury.

There is testimony that soon after plaintiff left the physician's office in Vernon he took a train to Lapeer and was taken from there to his home in an automobile, where he arrived about midnight, and was put to bed.

A physician was called the next morning who cared for and treated him. This physician took an X-ray photograph of the injured parts. He produced it at the trial, and with it described the injury, stating he found two bones fractured, bruises, and ligaments ruptured, swelling and discoloration half way up to the knee. He put the limb in a plaster cast and treated it for some time; that plaintiff suffered from the injury; that he could not say the injury would be permanent, but would expect it to trouble a man of plaintiff's age a long time. Plaintiff testified to severe pain and suffering, described the nature and extent of his injury as he experienced it, told of the continuance of the pain, of inability to freely use the limb and to do his work. The injured ankle was exhibited to the jury; other witnesses corroborated portions of plaintiff's testimony as to the nature, extent, and permanence of the injury. There was a marked conflict of testimony; but if the jury believed the testimony of plaintiff and his witnesses (and the credibility of witnesses was for them to determine) the verdict was far from excessive. *Kathmeyer* v. *Mehl* (N. J. Sup.), 60 Atl. 40.

The claim that defendant was guilty of no conduct constituting actionable negligence cannot be disposed of as a proposition of law. There is evidence in the case tending to show that he was driving his car at an excessive rate of speed; that he approached without giving proper warning; that he saw plaintiff diagonally crossing the highway between the two conveyances, with his back partially towards the car and in the direct path of it, apparently hesitating, as if confused. Seeing this, and seeing, as he himself states, that the horse Mrs. Pearson was driving was restless and excited, he drove right on at a rate of five or six miles an hour as he states, and at a rapid speed as others testify, making a curve to miss plaintiff, when, according to his own testimony, he had his

car under complete control and could have stopped it instantly. Irrespective of any statutory liability, his negligence was fairly put in issue by the testimony, as a question of fact for the jury.

The reciprocal rights and duties of a pedestrian and driver of an automobile are clearly stated with many citations in *Hennessey* v. *Taylor,* 189 Mass. 583 (76 N. E. 224, 3 L. R. A. [N. S.] 345, 4 Am. & Eng. Ann. Cas. 396), which is well in point here. It is there said that "although each had the right to pass and repass, neither could so negligently exercise this right as to injure the other"; and, the parties having come into collision, the usual questions of due care on the part of the plaintiff and negligence of the defendant are ordinarily issues of fact for the jury. Such was clearly the case as to the defendant under the conflicting testimony appearing in this record.

It is well settled by abundant authority that it is negligence for the driver of a conveyance, having ample space to pass a pedestrian on a highway, to so guide his vehicle as to strike the latter in passing. *Boick* v. *Bissell,* 80 Mich. 260 (45 N. W. 55) ; *Lazell* v. *Kapp,* 83 Mich. 36 (46 N. W. 1028) ; *Graham* v. *Evening Press Co.,* 135 Mich. 298 (97 N. W. 697) ; *Gerhard* v. *Motor Co.,* 155 Mich. 618 (119 N. W. 904, 20 L. R. A. [N. S.] 232) ; *Navailles* v. *Dielmann,* 124 La. 421 (50 South. 449, 134 Am. St. Rep. 508) ; *Weil* v. *Kreutzer,* 134 Ky. 563 (121 S. W. 471, 24 L. R. A. [N. S.] 557). *Diamond* v. *Cowles,* 174 Fed. 571, 98 C. C. A. 417, is in point. There defendant, driving an automobile, struck plaintiff while approaching him from the rear, walking across the street diagonally; there was evidence that the accident could have been avoided by defendant slackening his speed or swerving to the right, and also conflicting testimony as to whether plaintiff was still continuing on his course, or whether looking round and seeing the car he step-

ped back in front of it, it was held that the question of defendant's negligence was for the jury.

It is urged that plaintiff's contributory negligence is so conclusively shown as to make it imperative for the court to hold, as a matter of law, that it precludes him from recovery. This claim is chiefly based on the assumption that, as a physical fact, he would not, and could not, have been hit by the rear wheel of the car, as it is undisputed he was, after the front wheel cleared him, unless he himself stepped back or turned against the car after the front wheel had passed. Plaintiff and others testify positively that he did not. Was it a physical impossibility for him to have been injured as he was, if he did not? He had a right to be in the highway and to walk across it. He was not bound to be constantly on the lookout to ascertain if an automobile was approaching him, under penalty that, failing to do so and he was injured, his negligence must be conclusively presumed. He testifies that he did not hear or see defendant's car and had no knowledge of its approach until it struck him. He was nearly across the traveled portion of the road when struck. Defendant testifies that in the direct line he was driving he would have run over plaintiff, and that he swerved to the left to pass him. It is shown that the front and rear wheels of the car did not track at that point, but made separate marks on the ground at the place of collision. It can well be argued, as a physical fact, that turning quickly to the left and back to the right in making a curve around plaintiff would cause the rear wheel to travel farther to the right at the point of collision. His physician, describing the injury, said that there was a rubbing of the skin produced by a blow applied to the outer back part of the ankle a little above the tendon achilles, about two inches wide and of irregular shape, indicating plaintiff was, when struck, facing from the car, with his right leg nearest to it and at an angle. We

find nothing disclosed to take the question of his negligence out of the general rule. It was fairly submitted to the jury, with appropriate instructions on the rules of contributory negligence.

The statute provides that the lamps of a running automobile shall be lighted within one hour after sunset. It was admitted defendant's lamps were not lighted at the time of the accident, and plaintiff charged that it was then after nightfall and over an hour after sunset. This was strenuously denied by defendant, who claimed it was broad daylight and the sun had set but a short time before. Plaintiff was permitted to introduce testimony that other automobiles, met before the accident, had their lights burning and that lights were lit in the village of Vernon when plaintiff arrived there shortly after. It is urged that evidence of lights on other automobiles was incompetent and prejudicial in itself, and that, in any view, counsel for plaintiff made improper use of it in his argument to the jury. This evidence was not admissible to fix a standard of care for defendant or a test of his legal duty. It was not admitted for that purpose, but under the theory that the general and normal conduct of men or animals, resulting from some natural physical condition, has probative force as to the then existence of such condition. Wigmore on Evidence, § 459. Mankind, as a rule, does not walk under open umbrellas in dry weather, nor light lamps in buildings nor carry lighted lanterns around in daylight. As having some evidentiary qualities bearing on whether it was light or dark at the time of the accident, we think this testimony admissible; it being restricted to that purpose. The trial court so restricted it, and, when objection was made to an improper argument of counsel for plaintiff as to what it proved, the court distinctly stated, "It was admitted for this purpose for the purpose of finding whether it

was dark or light." Later the court in its charge cautioned the jury as to this testimony and said:

"The court instructs the jury not to consider the testimony in this case as to the lights or absence of lights on other automobiles passed by the plaintiff and others on the highway in question prior to the injury to plaintiff, as affording a test of the legal duty of the defendant in any event. * * * Testimony as to the lights or the absence of lights on other automobiles operated on this highway prior to the time plaintiff was injured can only be considered by you as bearing on the question as to whether it was light or dark. On that point such testimony is merely evidential and not to serve as a legal standard of conduct of the defendant."

We think under this instruction and caution to the jury, as well as the correction of counsel for plaintiff during the argument objected to, there is no reversible error in relation to the testimony complained of.

Error is assigned to the ruling of the court allowing the following question to be answered by Dr. Kay, the physician who attended plaintiff:

"Q. Say, in a man like Mr. Schock, 57 years old and injured as he was injured, by being knocked down and run over by an automobile, and his ankle injured, whether that injury to his ankle will be permanent or not, in your opinion."

This was objected to on the ground that there is no such allegation in the declaration of the permanency of the injuries as would warrant such testimony. The declaration describes the injuries in detail and alleges that "his said right ankle and foot then and there became and were and are permanently crippled and lamed"; but were that allegation absent, we fail to discern how the testimony elicited by this question could be a ground of complaint on the part of the defendant. The doctor replied:

"I don't think any person can say it is going to be permanent. * * * I couldn't tell you how long

it will be before it will be well.  That is only guessing; couldn't tell you anything about that."

A neighbor who visited plaintiff, the day after the accident as he thought, testified to finding him in bed suffering with an injured ankle and foot, which witness described, and was allowed to answer the following question, against objection:

"*Q.* During the time you were there, during the two hours, what exclamations or evidence of Mr. Schock's suffering then present pain did you hear or observe?"

The witness answered:

"He was making a great fuss, being in such pain he couldn't lie still.  First he would put his foot in one position, then he would move it again in another. He looked a little peaked.  There was a drawn expression in his face."

Error is assigned upon this ruling, and it is said:

"This was several days after the accident, and we contend this was not within the rule admitting exclamations of present suffering as the evidence shows it was not free from that suspicion which the law condemns"—citing *Strudgeon* v. *Village of Sand Beach,* 107 Mich. 496 (65 N. W. 616) ; *Mott* v. *Railway Co.,* 120 Mich. 127 (79 N. W. 3).

It is claimed that the suspicion which the law condemns arises from the fact that at the time of the accident plaintiff made remarks indicating a purpose to bring suit.  No suit had then been begun, and there is nothing to indicate that the witness had any knowledge one was anticipated, or that any exclamations were made to him, or in his presence, in anticipation of his being a witness.  His visit was a natural call upon a neighbor who had been injured, and there is no evidence that litigation was then thought of or mentioned by either.  In the cases cited (to which may be added *Hyatt* v. *Adams,* 16 Mich. 180; *Johnson* v. *McKee,* 27 Mich. 471; *Will* v. *Village of Mendon,* 108 Mich. 251 [66 N. W. 58] ; *Pruner* v. *Railway,* 173

Mich. 146 [139 N. W. 48]), the rule is recognized that exclamations and manifestations of present suffering are admissible, unless made to one in contemplation of his becoming a witness. We think the testimony was admissible.

A careful reading of the lengthy record fails to convince us that the verdict is contrary to the overwhelming weight of evidence and that a new trial should be granted for that reason. The case was submitted to the jury under a very full and fair charge, which clearly explained to them the nature of the controversy, the issues for them to decide, and the rules of law by which they should be governed in passing upon the facts.

We conclude that the strongly conflicting evidence on the material issues involved was such as to take the case to the jury and find no error in the record which would justify us in reversing the judgment. Accordingly the same is affirmed.

MOORE, MCALVAY, BROOKE, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.