## PATTERSON TRANSFER CO. v. SCHLUGLEIT.

(Circuit Court of Appeals, Sixth Circuit. August 3, 1918.)

No. 3106.

1. MUNICIPAL CORPORATIONS ☞706(6)—COLLISION IN STREET—NEGLIGENCE—QUESTION FOR JURY.

In action by plaintiff pedestrian for injuries due to collision with automobile within or near intersecting streets, question of negligence *held*, under evidence, for jury.

2. TRIAL ☞178—DIRECTED VERDICT.

Upon defendant's motion for directed verdict, the evidence will be viewed in the light most favorable to plaintiff.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. MUNICIPAL CORPORATIONS ⬤⟹705(1)—COLLISION AT STREET INTERSECTION —DUTY OF AUTOMOBILE DRIVER.

It is the duty of the driver of an automobile himself, independently of the conduct and intentions of drivers of other vehicles, to exercise reasonable caution and care as respects the safety of others in approaching and passing over foot crossings of city streets.

4. MUNICIPAL CORPORATIONS ⬤⟹705(1)—COLLISION AT STREET INTERSECTION —DUTY OF AUTOMOBILE DRIVER.

The amount of care and caution required of an automobile driver, in approaching and passing over foot crossings of city streets, is to be proportioned to the amount of travel.

5. MUNICIPAL CORPORATIONS ⬤⟹705(2)—USE OF STREETS—DUTIES.

The general rule concerning the rights and reciprocal duties of travelers, one on foot and the other in an automobile, is that both have equal rights, but that each in the exercise of his rights is bound to use ordinary care respecting the other.

6. MUNICIPAL CORPORATIONS ⬤⟹705(1)—USE OF STREETS—DUTIES.

After a pedestrian has entered upon a street crossing in a prudent manner, he is entitled to the exercise of reasonable care on the part of drivers of subsequently approaching machines.

7. MUNICIPAL CORPORATIONS ⬤⟹705(10)—USE OF STREETS—DUTIES.

After a pedestrian has entered upon a street crossing in a prudent manner, he is not bound, as a matter of law, to be continually looking or listening for automobiles.

8. MUNICIPAL CORPORATIONS ⬤⟹706(7)—COLLISION AT STREET INTERSECTIONS —CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

Where a pedestrian, after having prudently entered upon a street crossing, is injured by collision by an automobile, the question of contributory negligence is one of fact.

9. TRIAL ⬤⟹296(13)—INSTRUCTIONS—CORRECTION.

In action by pedestrian for injuries due to collision with automobile, where ordinance giving pedestrian right of way at crossing was introduced in evidence without objection, defendant's complaint as to giving of instruction that plaintiff had right of way will not be sustained; charge being modified as limited by the ordinance and defendant reserving no exception and making no assignment to charge as modified.

In Error to the District Court of the United States for the Western District of Tennessee; John E. McCall, Judge

Action by Alfred Schlugleit against the Patterson Transfer Company. Verdict and judgment for plaintiff, and defendant prosecutes error. Affirmed.

Steen & Klewer, of Memphis, Tenn., for plaintiff in error.

Randolph & Randolph, of Memphis, Tenn., for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

WARRINGTON, Circuit Judge. Action to recover damages for personal injuries sustained by Schlugleit, plaintiff below, through alleged negligent operation of an automobile in Memphis, Tenn., on the evening of January 18, 1917. The automobile was owned by the Patterson Transfer Company, defendant below, and operated by Walter E. Lott, superintendent of defendant's warehouse department, and the injuries were inflicted within or near the intersection of Exchange

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

avenue and Second street. Plaintiff recovered verdict and judgment in the sum of $4,000, and defendant prosecutes error.

[1] The fact that the injuries were inflicted by an automobile owned by defendant and then in control of its agent, and the amount of recovery, are not in dispute. The controversy hinges on the question whether the injury was caused through the fault of Lott or that of plaintiff himself. The course of Exchange avenue is east and west, and that of Second street north and south. It is plain enough that when plaintiff was struck by the automobile he was attempting to cross Second street along a course within the lines (extended) of the north sidewalk of Exchange avenue; yet the parties differ as to the direction in which he was walking, whether from west to east or east to west, and as to the effect of this feature upon the case. The plaintiff testified that in going to the place of crossing he walked north on the west side of Second street "until he got to Exchange avenue, crossed Exchange avenue," and then "crossed at the very corner of Exchange avenue and Second street, * * * going from the west to the east side of Second street"; that "before going east" he "looked in all directions" and "saw nothing coming," saying that his sight was good, but that he was "deaf and could hear very little": that he had "gotten about half across Second street when he felt the impact (of the automobile) and did not know anything more." No witness in terms contradicted this testimony.

The plaintiff called Lott, who in substance testified: That while going in a Ford runabout from the company's warehouse to its office on Second street "the electric headlights blew out, probably caused by an oversupply of gasoline which was permitted to get into the engine"; that upon discovering this he "stopped and lighted his front oil light." While on Second street, and nearing Exchange avenue, "just a short distance north of the crossing where pedestrians would pass," he "became blinded by an automobile with a very bright light, and felt his car come in contact with something, but had no idea what it was." He then turned into Exchange avenue "to avoid traffic." He returned, however, and "saw an elderly man near the middle of Second street, a short distance north of Exchange avenue," who was being assisted to his feet by another man, and Lott then removed the injured man, plaintiff, to the home of his friend. Lott further stated that in going south on Second street he overtook a horse-drawn wagon, a large express wagon, and followed it "for the distance of about a half block," at a speed of "about six miles an hour," until the wagon turned west into Exchange avenue. He says that his oil lamp afforded enough light to "see 20 feet ahead"; that an arc light was in operation at the intersection of Second street and Exchange avenue, "so that one could see a man crossing at the intersection"; that he "felt the impact (collision with plaintiff) on the left front of the car about on a line with the front left wheel"; that he was then driving his car on the west side of Second street, about half way between the curb and the middle of the street; that he was "keeping a lookout on approaching the crossing, and there was nothing" between his car and the express wagon before he was blinded.

The plaintiff and Lott were the only witnesses called by either side whose testimony tends to show that plaintiff was struck by defendant's automobile or how the collision happened. Defendant called Mr. Goodlett, who testified that while he and a young lady were in an automobile traveling south on Second street, she called his attention to a man lying in Second street, and that he went to the assistance of the man, who proved to be the plaintiff. The witness states that "the old man was trying to get up," and that he was assisting him when Lott returned, as stated, after driving his car into Exchange avenue. Both Goodlett and Lott testify that plaintiff was lying at or near the middle of Second street; the former saying he was about "12 feet from the north curb line of Exchange avenue," and the latter that he was "a few feet north of the north line of the crossing, probably about 20 feet."

[2] At the close of all the testimony a motion of defendant to direct a verdict in its favor was overruled, and exception and assignment followed. We think the motion was rightly denied. We need only to state the rule that upon defendant's motion it was the duty of the trial judge to take that view of the evidence most favorable to the plaintiff. There are several facts which should be observed and remembered. The evening was dark, and Lott with his oil lamp could not see more than 20 feet ahead. In these conditions he placed his car behind a large express wagon and kept it there throughout a distance of half a block in going south on Second street to Exchange avenue, driving on the west side of Second street, as he says, "about halfway between the curb and the middle of the street." When the express wagon reached Exchange avenue it turned west into that street, and Lott must then have deflected the course of his car toward the center of Second street where, all the witnesses agree, plaintiff was stricken down. What, then, is to be said of Lott's conduct in approaching the crossing in question? It is reasonably certain that, prior to the time the express wagon was turned west into Exchange street, Lott did not keep his car in position either to be seen, for instance, by pedestrians entering the crossing from the west side of Second street, or to enable Lott himself to see such pedestrians; and it is not claimed that the express wagon carried a light. Lott says he was keeping a lookout; but the extent of his so-called lookout is explained by his testimony that "there was nothing between him and the express wagon in front of him before the time he was blinded." The evident meaning of this is that Lott was not blinded until after the express wagon opened his view to the crossing and intersection; indeed, he says he was blinded by the lights of another automobile about the time he felt his car strike something, he did not know what. If we now recall the facts: (a) That the course of the express wagon and Lott's car south on Second street was midway between the center and the west curb line of the street; and (b) that the collision took place at the center of Second street—we shall see that Lott has failed to explain why he did not discover plaintiff and take measures to avoid colliding with him during the interval between the time he turned his car away from the express wagon and the time he was

blinded. One of two conclusions inevitably ensues: Either Lott followed behind the express wagon too long, and so failed to place himself and his car in position seasonably, and irrespective of the course the express wagon might take, to ascertain the condition of the crossing over which he intended to drive, or he failed to keep a look-out between the time the obstruction of the express wagon was removed and the time he was at once blinded and brought into collision with the plaintiff; and in either event he is open to the inference that he failed in the discharge of an obvious duty.

[3, 4] It is the duty of the driver of an automobile himself, inde-depeudently of the conduct and intentions of drivers of other vehicles, to exercise reasonable caution and care as respects the safety of others in approaching and passing over foot crossings of city streets; this results from the well-known dangers attending the movements of automobiles in crowded streets. The amount of care and caution to be exercised by the driver is, of course, to be proportioned to the amount of travel, pedestrian and vehicular alike, that usually gathers and passes over particular crossings. Commonwealth v. Horsfall, 213 Mass. 232, 235, 100 N. E. 362, Ann. Cas. 1914A, 682; Irwin v. Judge, 81 Conn. 492, 501, 71 Atl. 572; Hannigan v. Wright, 5 Pennewill (Del.) 537, 541, 63 Atl. 234; Grier v. Samuel, 4 Boyce (Del.) 106, 108, 86 Atl. 209; Lorah v. Rinehart, 243 Pa. 231, 233, 234, 89 Atl. 967; Liebrecht v. Crandall, 110 Minn. 454, 456, 126 N. W. 71; Lauson v. Fond du Lac, 141 Wis. 57, 60, 123 N. W. 629, 25 L. R. A. (N. S.) 40, 135 Am. St. Rep. 30; Leach v. Asman, 130 Tenn. 510, 514, 172 S. W. 303; Deputy v. Kimmell, 73 W. Va. 595, 598, 80 S. E. 919, 1 L. R. A. (N. S.) 989, Ann. Cas. 1916E, 656; O'Dowd v. Newnham, 13 Ga. App. 220, 225, 80 S. E. 36, as modified in Giles v. Voiles, 144 Ga. 853, 856, 88 S. E. 207.

We may here recur to plaintiff's entrance upon the Second street crossing. His testimony would naturally have been accepted upon the motion to direct, in view of the darkness and the position of defendant's car behind the unlighted express wagon. Further, plaintiff might well have progressed so far on the crossing as not to have observed (and in view of his deafness he probably would not have heard) the approach and passage of the express wagon behind him, and still have been overtaken and struck by defendant's car; indeed, he must have walked nearly half the distance along the crossing before the express wagon turned into Exchange avenue, or defendant's car turned away from the wagon and toward the point of collision. These conditions were not affected by the fact, if it was a fact, that several cars, including the express wagon, approached the intersection shortly before plaintiff had reached the middle of the crossing; this is but common experience as respects the movements of automobiles; such a circumstance certainly cannot be said as matter of law to be inconsistent with the testimony of plaintiff that, upon entering the crossing, he looked in all directions and saw nothing coming; we need not repeat that the darkness was calculated to conceal both the unlighted express wagon and defendant's car immediately behind it.

[5] The general rule concerning the rights and reciprocal duties

of travelers upon a street, one on foot and the other in an automobile, is that both have equal rights in the use of the street, but that each in the exercise of his rights is bound to use ordinary care respecting the other. Lane v. Sargent, 217 Fed. 237, 240, 133 C. C. A. 231 (C. C. A..1); Hennessey v. Taylor, 189 Mass. 583, 584, 76 N. E. 224, 3 L. R. A. (N. S.) 345, 4 Ann. Cas. 396; Schock v. Cooling, 175 Mich. 313, 323, 141 N. W. 675; Leach v. Asman, supra, 130 Tenn. 515, 172 S. W. 303. In the instant case, however, it is to be observed that an ordinance of the city of Memphis upon the subject of street crossings was received in evidence and without objection. The ordinance provides:

"Sec. 505. Regular street crossings for persons on foot shall be at points from one corner of a street or alley directly at right angles with the street or alley, and this whether any footway is specially placed along said line or not."

"Sec. 506. Foot passengers, crossing streets or alleys at points marked out by ordinances as regular crossings, shall have precedence or right of way over all vehicles."

In Leach v. Asman, supra, 130 Tenn. 515, 172 S. W. 303, the Supreme Court of Tennessee apparently recognizes the right of a municipality of the state to prescribe locations for street crossings. Upon the motion to direct, neither the court nor the counsel appear to have made any allusion to the ordinance, though in the course of the charge a question relating to it arose, which will be considered later. Whatever legal effect, if any, may be ascribed to section 506 of the ordinance, certainly the provision could not have been helpful to defendant under its motion to direct; nor is it necessary here to consider the provision, since the assignment as to denial of the motion is fairly met by the general rule, before pointed out, touching the respective rights and duties of persons using a street.

[6-8] The natural inference to be drawn from plaintiff's testimony is that he prudently entered the crossing in question at its west end and followed it eastwardly until he was struck by defendant's automobile. True, he was found endeavoring to arise at a point shortly north of the crossing; but this variation in his course is sufficiently accounted for by the efforts he was making to get upon his feet. After a person has once entered upon a street crossing in a prudent manner, he is entitled to the exercise of reasonable care on the part of drivers of subsequently approaching machines; in proceeding thence along the crossing, whatever one may do in the way of caution for his own protection, he is not bound as a matter of law to be continuously looking or listening for the approach of automobiles. Hennessey v. Taylor, supra, 189 Mass. 585, 586, 76 N. E. 224, 3 L. R. A. (N. S.) 345, 4 Ann. Cas. 396; Knapp v. Barrett, 216 N. Y. 226, 230, 110 N. E. 428; Schock v. Cooling, supra, 175 Mich. 324, 141 N. W. 675. At most, in such circumstances the question of contributory negligence is one of fact. See cases just cited, and Leach v. Asman, supra, 130 Tenn. 515, 172 S. W. 303; Tiffany & Co. v. Drummond, 168 Fed. 47, 48, 93 C. C. A. 469 (C. C. A. 2).

The remaining assignments of error concern two statements contained in the general charge. One was:

"The undisputed evidence is that the plaintiff left the west side of Second street and that he was found about the middle of Second street."

This was modified later by a further statement to the jury:

"You are the exclusive judges of the weight of the evidence and the credibility of the witnesses."

The idea that the direction plaintiff pursued on the crossing was west, and not east, before alluded to, grows out of the testimony of Lott that plaintiff did not pass between the express wagon and his car. It is claimed that this was opposed to plaintiff's testimony that he entered the crossing at the west side of Second street and walked east until he was struck by the automobile. If he had been walking west, he hardly could have been struck, as he was, on his left side by Lott's car. We cannot think it important to dwell upon this feature of the defense. Lott's statement was calculated to expose the meagerness of his lookout, rather than to contradict the testimony of plaintiff.

[9] The other statement contained in the charge, and now complained of, is that the court instructed the jury that in crossing the street plaintiff had the "right of way." This instruction, it is true, was given; but, upon exception being reserved, the trial judge explained that he meant to give the term "right of way no further significance than that implied by the reading of the ordinance." The ordinance is quoted above, and we have seen that it was received in evidence without objection. No request concerning its effect was made by either side; and we think the trial judge's explanation operated to restore the precise situation which existed at the time the ordinance was received in evidence. In a word, the portion of the charge to which exception was reserved was in effect eliminated; and, it is to be added, no exception was reserved and no assignment is made to the charge as modified.

It results that the judgment must be affirmed, and an order will be entered accordingly, though we cannot assent to the claim made that the writ of error was prosecuted merely for delay, and hence the allowance of damages asked under our rule 26 is denied.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes