### 4533. O'DOWD *v.* NEWNHAM.

1. A pedestrian and a person with an automobile have each the right to use the public highway, but the right of an operator of an automobile upon the highway is not superior to the right of the pedestrian, and it is the duty of each to exercise his right with due regard to the corresponding rights of the other.

2. The driver of an automobile is bound to use reasonable care and to anticipate the presence on the streets of other persons having equal rights with himself to be there; and a pedestrian, when lawfully using the public highways, is not bound to be continually looking and listening to ascertain if auto-cars are approaching, under the penalty that if he fails to do so and is injured, it must be conclusively presumed that he was negligent.

3. The degree of diligence which must be exercised in a particular exigency is such as is necessary to prevent injuring others; and in considering whether the operator of an automobile exercised due diligence, or, by failure to exercise due diligence, was guilty of negligence, the character of the instrumentality which he operated, and the danger attached to its operation if improperly used, as well as the character of the highway being traversed, and the probability of inflicting injury if all needed care was not used in the operation of the machine, are all to be taken into account.

4. The terms "contributory negligence" and "failure to use ordinary care to avoid injury" are not synonymous, but proof either that the person injured used ordinary care to avoid injury, or that the party inflicting the injury was guilty of such gross negligence that the injury of the other party could not have been prevented even by the exercise of ordinary care, may entirely negative the existence of contributory negligence.

5. A pedestrian who, in using a public highway, is in the exercise of due care for his own protection and for the safety of others can not, as a matter of law, be held to be guilty of contributory negligence merely because he does not run to escape injury by an automobile. Automobiles

have no priority of right in the use of the public highways, and the operation of an automobile upon the crowded streets of a city necessitates exceeding carefulness on the part of the driver. Thoughtless inattention on his part is the essence of negligence.

6. Even if contributory negligence is an affirmative defense and must be specially pleaded, unless the evidence affirmatively establishes that the negligence of the injured party contributed to the injury the defense of contributory negligence, whether pleaded or not, can not be employed to defeat the action.

7. Since the driver of an automobile is bound to use a degree of reasonable care proportioned to the danger of the instrumentality which he operates, and is bound, when traversing a much-frequented street, to anticipate the presence on the street of other persons having an equal right with himself to be there, proof in this case that the automobile in question was suddenly turned from the course it was taking, whereby it collided with a pedestrian to whom no signal or warning was given by the driver of the automobile, it appearing, from undisputed evidence, that the pedestrian was exercising due care, was sufficient to authorize the jury to find that the negligence of the driver was the proximate cause of the injury, and to so exclude all idea of contributory negligence as to render instructions by the court upon this subject unnecessary.

8. The operation of an automobile at a rate of speed in excess of that prescribed by a valid municipal ordinance is negligence per se. The driver must so operate his automobile as to have its speed at all times under his control; and whenever it is necessary, for the preservation of either person or property, that the automobile should be brought to a stop, the exercise of reasonable care requires that the vehicle be stopped instantly. It is for the jury to determine, from the evidence, in any case of a collision between an automobile and a pedestrian, whether it was the duty of the driver to have stopped the automobile, whether he endeavored to do so, and whether the failure to stop in the particular case was due to negligence.

9. Whether the use of a gong, a horn, or other warning to pedestrians, is necessary in the exercise of due diligence by the driver of an automobile, and whether the failure of the driver to give these or other cautionary signals is negligence, are jury questions, dependent for solution upon the peculiar facts of the particular case; and for this reason the judge in this case did not err in refusing to charge the jury that "there is no law requiring the operator of an automobile, while properly using the streets, to sound a gong, blow a horn, or give other warning to pedestrians of its approach."

10. Refusal to give a requested instruction to the jury is not error, unless the charge requested is in itself correct and perfect; and although a request to charge may contain a correct abstract principle of law, it is properly refused where it may be misleading or confusing when applied to the facts of a particular case. However, so far as it was pertinent, the instruction requested in this case was covered in the general instructions of the court to the jury; and inasmuch as the instructions given were correct, the complaint that some other appropriate principle of law was not given in immediate connection therewith is not ground for a new trial.

11. Even if the right of one who is injured by another, to whom he does not occupy any contractual relation, to recover damages for the injury, can be defeated by proof that the negligence of the injured party was equal to that of the tort-feasor, instead of merely being diminished in proportion to the negligence of the injured party, still the charge of the court upon this subject affords the defendant no cause for complaint. The court charged the jury: "If you believe that Mr. Mulherin [the driver of the defendant's automobile] was negligent to some extent, and you also believe that Mr. Newnham was negligent to an equal or to a greater extent, the plaintiff can not recover in this case, and your verdict shall be for the defendant." In view of this instruction, failure of the court to charge that if the deceased and the defendant's driver were equally negligent the plaintiff could not recover is not cause for a new trial, especially as no appropriate request to charge on the subject of equality of negligence was presented.

12. The evidence authorized the verdict, and there was no error in refusing a new trial.

DECIDED AUGUST 16, 1913.

Action for damages; from city court of Richmond county—Judge Eve. November 8, 1912.

Mrs. Newnham brought suit against J. L. O'Dowd for damages for the homicide of her husband, who was struck down and killed by the defendant's automobile. The jury returned a verdict against the defendant for $10,000, and, his motion for a new trial having been overruled, he excepted.

The evidence disclosed that Newnham was on the northwest corner of McKinne and Broad streets in the city of Augusta, Ga., when a street-car which passed his home was leaving McKinne street. In an endeavor to catch the street-car he ran in approximately a straight line diagonally from Padgett's corner across the north driveway of Broad street to a point near the center of the street, where the tracks of the street-railway diverged. He was going practically in an easterly direction. At the same time the defendant was coming up the north side of Broad street in an automobile, with his family, going west, and when he reached a point approximately opposite Newnham the automobile was suddenly turned to the left, i. e. south, and was in the act of crossing the street-car tracks at right angles to its original course when the front of the automobile struck Newnham, who was still running to overtake the street-car. Newnham was knocked violently to the ground and received fractures of the skull, from which he died a short time afterward. There was a brilliant electric arc-light at McKinne street, and another within a short distance from the point where

the collision occurred; and there was testimony which authorizes the inference that the defendant and Newnham each saw the other, or, in the exercise of due diligence, they could have seen each other, plainly. The distance which Newnham ran, from Padgett's corner to the point where he was struck by the automobile, was approximately 75 yards. The width of the north driveway of Broad street, along which the defendant's automobile was moving, was 52 feet. The total space occupied by the car tracks in the center of Broad street was 17 feet and 9 inches. It is inferable, from the evidence, that the distance which the automobile traveled from the time it began to turn to the south, across the street-car tracks, to the point at which it struck Newnham, could not have exceeded 50 feet; while the distance which Newnham ran was approximately 210 feet. There was no obstruction which prevented the driver of the automobile from seeing Newnham.

There was testimony in behalf of the defendant that the attempt to turn the car to the south, across the tracks, was caused by the fact that a street-car was in the act of stopping at McKinne street; but it is undisputed in the testimony that the automobile suddenly turned from its westbound zone of travel, up the westbound driveway on Broad street, to a direction south and approximately at right angles to its former direction and across the street-car tracks in the center of Broad street. No gong was sounded, no horn blown, nor was any warning or signal given by the driver or other person in the machine. Testimony for the defendant shows that the driver of the automobile made every effort to stop the machine after Newnham's peril was imminent, but there is evidence that the car ran 34 feet, after the emergency brakes were applied, before it stopped, and there is evidence that a car running at the speed testified to by the defendant's witnesses could be stopped, by the application of emergency brakes, within a much shorter distance. An ordinance of the City of Augusta was introduced which forbade the running of automobiles upon the public streets of the city at a rate of speed greater than 12 miles per hour. The evidence as to the speed at which the automobile was running prior to the time when Newnham was struck by the driver of the automobile was in conflict, but there was evidence in behalf of the plaintiff which would authorize the jury to infer that the machine was operated at a rate of speed in excess of that permitted by the municipal ordinance.

In the motion for a new trial error is assigned because the court refused to charge the jury, though requested so to do, that "there is no law requiring the operator of an automobile, while properly using the streets, to sound a gong, blow a horn, or give other warning to a pedestrian of its approach;" also because the court refused to charge as follows: "If Mr. Newnham and Mr. Mulherin were equally in the wrong, the plaintiff can not recover, and your verdict must be for the defendant." Exception is also taken to the following instruction: "The law permits the use of the streets to pedestrians, equestrians, and users of automobiles. They all have an equal right upon the street, but the law places the burden and responsibility upon all users of the street, and says that each shall exercise ordinary care and diligence to avoid and prevent injury to the other." It is further insisted that the judge, in various portions of his charge to the effect that the defendant would be liable if Mulherin were guilty of negligence unless Newnham could have avoided injury by the exercise of ordinary care, excluded from the consideration of the jury the principle that if both Mulherin and Newnham were equally negligent, the plaintiff could not recover; and also that one of the instructions precluded the jury from considering the legal consequences of the decedent's failing to exercise ordinary care, in running in a reckless manner across the street at a place other than a crossing, with the result of causing the injury to himself.

William H. Barrett, Little & Powell, for plaintiff in error.

E. H. Callaway, Horace M. Holden, contra.

RUSSELL, J. (After stating the foregoing facts.)

Since we are convinced, after a painstaking investigation of the record, considered in the light of decisions of courts of last resort in many of our sister States, that the verdict was supported by the evidence and that there was no material error in any of the instructions of the court to which exception is taken, nor in the refusal of the court to give the instructions which were requested, we might dispose of the case by a simple affirmance of the judgment refusing a new trial. However, the points insisted upon by learned counsel for the plaintiff in error are so ingeniously and earnestly urged that they deserve more than a passing notice. Furthermore, the largely increasing use of automobiles, and the fact that the relative duties of automobilists and pedestrians, under a

state of facts similar to those here presented, has not been the subject of direct adjudication in this State, makes imperative, even more than ordinarily, the duty imposed upon us by law of deciding each question involved in the case before us. Civil Code, § 6197.

1. We may start with the proposition which is elementary, and which has been recognized in all the rulings upon the use of automobiles, that a pedestrian and the user of an automobile have equal rights upon public highways, and that each is to use the highways bearing in mind the right of the other and in such a manner as not to injure the other. This court has already held (*Lewis* v. *Amorous, 3 Ga. App.* 50, 59 S. E. 338) that automobiles are not inherently dangerous instrumentalities, but that the danger arises from the negligent or improper use of the machine. There may have been a time when, because of the novelty of the vehicle, as well as its inherent force and power, there was question as to whether the use of automobiles should be permitted upon the public highways. However, ever since the ruling of the Supreme Court of Indiana, in Indiana Springs Company v. Brown, 165 Ind. 465 (1 L. R. A. (N. S.) 238), wherein it was held that "the law does not denounce the use of motors as such on the public ways," and that the uses to which a highway may be subjected must keep abreast with the progress of the times, the right of automobiles to use public highways has been accorded (but not the right of way), upon the authority of Chief Justice Cooley's dictum in Macomber v. Nichols, 34 Mich. 217 (a traction-engine case), that "a highway established for the general benefit of passage and traffic must admit of new methods of use whenever it is found that the general benefit requires them." It is uniformly held that the automobile, when properly handled, has the right to use the public highways. But as the law recognizes the duty of every user of the highway to avoid injury to every other person entitled to its use, the law does not lose sight of the fact that "diligence" (such diligence as must be used to prevent injury to another) is a variable term, defining a duty whose measure is largely dependent upon the circumstances in each particular case where the existence of this quality is the subject of inquiry. It is not to be forgotten that in order to fulfil the duty of even ordinary diligence, the danger attending the use of a particular instrumentality may impose a greater degree of care than would be necessary in the use of an instrumentality

which, no matter how it may be used, is not capable of inflicting so serious an injury. To use the illustration employed by one of the courts in this connection: "One who walks along a crowded thoroughfare with a sharp scythe in his hands must use greater care in handling this instrument than would be required of him if he held an umbrella or small cane." Weil v. Kreutzer, 134 Ky. 563 (121 S. W. 471, 24 L. R. A. (N. S.) 557).

2. One of the duties incumbent upon one who operates an automobile (and this is a duty incumbent upon the driver of any vehicle) is that of anticipating the presence upon the highway of other persons having rights to be there equal with his own; and if, by failure to discharge this duty, the right of another is disregarded and injury results, the owner of the automobile is liable for any consequent damage. The driver of an automobile is bound to exercise reasonable care in anticipating the presence of pedestrians upon the streets of a city, or upon rural highways, as well as to exercise reasonable care to the end that he does not injure them after he is aware of their presence. The application of this principle is qualified by the rule to which we have just referred in the first division of this opinion. The pedestrian, like the driver of an automobile, in the exercise of ordinary care for his own safety and for the safety of others, is required to anticipate the presence of persons and vehicles upon the highway; but it can not be said that the duty which is upon the pedestrian is as urgent as that devolving upon the driver of an automobile; for the foot-passenger's action or inaction in the premises is far less important to the other users of the highway. The impact of the body of a pedestrian, absorbed in his own meditations, upon a passer-by, might be measurably uncomfortable, but it would seldom be hazardous to either life or limb, whereas the impact of an automobile in motion while the driver is asleep might cause as certain death as if the injured person had been wilfully pursued and wantonly crushed. The pedestrian and the automobile have equal rights upon the highway, but their capacity for inflicting injury is vastly disproportioned. It follows also from this that the driver of an automobile can not be said to be using the highway within his rights, or to be in the exercise of due care, if he takes advantage of the force, weight, and power of his machine as a means of compelling pedestrians to yield to his machine superior rights upon the public highway designed for the use of all members of the public upon equal terms.

Instances are almost a matter of daily occurrence where apparently the drivers of automobiles operate their machines as if they have been granted a right of way over the public highways and as if it is nothing more than the duty of the pedestrian to yield precedence to the automobile, and to stop and wait until the automobile has passed before attempting to proceed in crossing a street or otherwise using the highway. If there is anything in the argument of priority, man was created before the automobile, and, to paraphrase a quotation from Holy Writ, man was not created for the automobile, but the automobile was created for man. Generally the natural instinct of self-preservation will inspire in the pedestrian a due degree of caution for his own safety, when he is aware of the approach of an automobile; and this the law will require him to exercise. Sometimes the circumstances surrounding the approach of one of these vehicles of ponderous proportions inspires a terror which paralyzes the power of locomotion on the part of the traveler on foot, especially if he be a child of tender years. In such a case the dangerous character of the instrumentality which the driver of an automobile is operating forbids the assertion that he has exercised even ordinary diligence, unless he has used every possible means to avoid injury to the pedestrian. On account of the ease with which injury can result from the slightest negligence or inattention in the operation of his machine, ordinary diligence requires that the driver of an automobile be constantly on the lookout, and that he have his machine in such condition as that it shall be under his perfect control. The pedestrian also is required to be on the lookout, but he has the right to assume that the drivers of all automobiles are on the lookout for him too; and if he is properly upon the public highway, which he is entitled to use equally with them, he has the right to assume that they are both willing and able to regard his rights. While, therefore, the law requires that a pedestrian and the driver of an automobile shall each anticipate the presence of the other upon the public highways, and that neither shall do any act likely to jeopardize the safety of the other, still, on account of the great disparity in their respective capacities to inflict injury, the exercise of ordinary diligence on the part of the pedestrian to look out for automobiles does not necessarily require as continuous caution as is requisite to enable an automobilist to fulfil the definition of "ordinary diligence," as

applied to one having in his charge a dangerous and death-dealing instrumentality. "The degree of care one must use always bears a direct ratio to the degree of injury which would probably be caused by negligence." Weil v. Kreutzer, supra. For this reason the courts have uniformly held that one who is operating an automobile upon the streets of a city must keep a constant lookout in anticipation of pedestrians, but that a pedestrian is not bound to be continually looking and listening to ascertain if auto-cars are approaching, under penalty that if he fails to do this and is injured, it must be presumed from this fact alone that he was negligent. Weil v. Kreutzer, supra; Thies v. Thomas, 77 N. Y. Supp. 276; Bradley v. Jaeckel, 119 N. Y. Supp. 1071; Gregory v. Slaughter, 124 Ky. 345 (99 S. W. 247, 124 Am. St. R. 402); Irwin v. Judge, 81 Conn. 492 (71 Atl. 572); Towle v. Morse, 103 Me. 250 (68 Atl. 1044); Simeone v. Lindsay (Del.), 65 Atl. 778; Hannigan v. Wright, 5 Pennew. (Del.), 63 Atl. 236; McFern v. Gardner, 121 Mo. App. 1, 19; Hennesey v. Taylor, 189 Mass. 583 (76 N. E. 224, 3 L. R. A. (N. S.) 345); Tiffany v. Drummond, 168 Fed. 47; 14 Am. Dig., Decennial Edition, 1787 et seq.; Huddy on Automobiles, §§ 47, 95, et seq.; Babbitt on Motor Vehicles, §§ 244, 268, et seq.

3. The degree of diligence which must be exercised in a particular exigency is such as is necessary to prevent injuring others; and, in considering whether the operator of an automobile exercised due diligence, or, by failure to exercise due diligence, is guilty of negligence, the character of the instrumentality which he operates, and the danger attached to its operation if it be improperly used, as well as the character of the highway being traversed, and the probability of inflicting injury if all needed care is not used in the operation of the machine, are all to be taken into account. While the driver of an automobile is required to anticipate the presence of pedestrians at all times upon all public highways, still, if in traversing a straight stretch of road or street he saw no one in sight, he would not be expected to exercise the same degree of caution (though his lookout should be none the less vigilant) as would be necessary were he passing along a thoroughfare thronged with vehicles and pedestrians, or about to pass a much-used street crossing. As stated above, to comply with his duty of exercising ordinary care, taking into consideration the surroundings and cir-

cumstances, the operator of an automobile should use every precaution necessary to prevent injury. He should never lose sight of the danger to which a pedestrian may be exposed by the operation of his automobile, or the injury which may be inflicted by failure on his part to operate it without due regard for the safety of others. It can well be said, that, as related to the use of an automobile, it is negligence ever to forget the dangerous quality of the machine, or to disregard it and employ the machine as a means of abusing the rights of others. An automobilist should ever bear in mind the ordinances and public laws regulating the operation of such machines and designed for the protection of the public.

4. It is strenuously urged by learned counsel for the plaintiff in error that the trial judge erred in his charge by practically limiting the defense to a consideration of whether the plaintiff's husband was negligent in failing to exercise due care to avoid the injury, and in excluding from the jury's consideration O'Dowd's defense that Newnham's negligence concurred in bringing about the danger from which the injury resulted. We do not assent to the statement that the trial judge excluded the defense of contributory negligence. As appears from the record, the judge more than once submitted to the jury the question whether negligence on the part of Newnham contributed to the injury, and instructed them, in effect, that if they found that his death was caused by negligence of the driver of the automobile, but that he also was guilty of negligence, any damages they might find should be diminished in proportion to the degree of negligence attributable to Newnham. This, under the facts of the case, was all that the judge was required to charge. It is true that the law recognizes two kinds of contributory negligence; that is, the law recognizes that contributory negligence may be due either to acts of commission or to acts of omission. In other words, the lack of diligence may consist in doing the wrong thing at the time and place in question, or it may consist in doing nothing when something should have been done. As stated by counsel for the plaintiff in error, a plaintiff may be negligent when he does some act which concurs with the defendant's act in bringing about the danger from which the injury results, or the negligence may consist in failing to use care to avoid the consequences of a danger after the defendant's act has made that danger operative, and the

plaintiff sees and knows the danger, or, in the exercise of ordinary care, should have seen and known it. We fully concur in the distinction or difference pointed out by counsel. But counsel admits that if it is manifest from the circumstances that the plaintiff (or injured party, if another person is entitled to recover for the injury) was free from fault in bringing about the injury, a failure of the court to instruct the jury with reference to such concurring negligence on the part of the injured party as would defeat recovery, would be harmless error; and, in our view of the evidence, the undisputed testimony in this case required a finding that no negligence whatever could be attributed to the plaintiff's husband. We do not hold in any case that contributory negligence, not amounting to such a lack of diligence as that the plaintiff by the exercise of ordinary care could have wholly avoided the injury, will entirely defeat a right to recovery on the part of a plaintiff who may himself have been guilty of negligence which concurred in causing the injury. Under our code, if the injury was primarily due to the negligence of the defendant, the right of the plaintiff is not defeated, even though but for the concurring negligence of the plaintiff the injury might not have resulted; but the plaintiff's recovery should be diminished in proportion to the degree in which his negligence contributed to the injury.

It may be conceded that the case might be different if O'Dowd and Newnham had both been pedestrians, or if both had been operating automobiles. In such a case the consideration as to whether each of them exercised diligence, or whether one of them was negligent, or whether both were negligent, would have been governed by the same principles. But considering the facts of the present record in the light of the principles to which we have heretofore referred, there can be no question that Newnham was not negligent, and the jury were authorized to say that the driver of O'Dowd's automobile was negligent. This took away from O'Dowd the possibility of defending upon the first kind of contributory negligence, and submitted to the jury only the issue as to whether O'Dowd's car was operated in such a manner as that the fatality which overtook Newnham could be properly adjudged to have been an unavoidable accident. Newnham was a pedestrian; he had a perfect right to cross the street at right angles, or diagonally. It

is true that he was running to catch a street-car, but a pedestrian has as much right to run upon the public street as to walk, provided that in running he uses due care for the safety of others. He was required also to use ordinary care for his own safety, but there is no evidence that his safety was endangered by any other vehicle of any description while running to catch the street-car. It must be presumed that he saw O'Dowd's automobile, because there was no obstruction to prevent his seeing it. If he saw it, he had the right to assume that the driver of the automobile, in the exercise of due caution and keeping a lookout, saw him; and he had the right to assume, since he saw the automobile traveling upon the north driveway, that it would not be suddenly turned before reaching the crossing, so as to cut off his progress or so as to come into collision with him. There is no theory that can be drawn from the evidence under which negligence can be attributed to Newnham, unless we concede that the rights of an automobilist upon public highways are superior to those of pedestrians, and that, on account of the greater weight and power of the automobile, the automobilist can force a pedestrian, whom he sees lawfully using the streets, to turn from his course and stop, or flee, at his (the automobilist's) pleasure. The judge would not have erred if, under the facts of this case, he had wholly omitted any reference to contributory negligence. Generally, where these defenses are relied upon, and always where there is evidence in support of both defenses, a trial judge should give the jury proper instructions both as to contributory negligence and the duty of the plaintiff (or the party alleged to have been injured) to use ordinary care to avoid injury; because the terms "contributory negligence" and "the failure to use ordinary care to avoid injury" are not synonymous. But proof that a party used ordinary care to avoid injury, or that the party inflicting the injury was guilty of such gross negligence as that the injury to the other party could not have been prevented by the exercise of ordinary care, may entirely negative the existence of contributory negligence.

5. A pedestrian who, in using a public highway, is in the exercise of due care for his own protection and for the safety of others can not, as a matter of law, be held to be guilty of contributory negligence merely because he does not run to escape injury by an automobile. Automobiles have no monopoly of the public high-

ways, nor any priority of right in their use, and "the operation of an automobile upon the crowded streets of a city necessitates exceeding carefulness on the part of the driver." Thoughtless inattention on his part is the essence of negligence. Lampe v. Jacobson, 46 Wash. 536 (90 Pac. 654) ; Towle v. Morse, supra.

6. We are strongly of the opinion that contributory negligence, being an affirmative defense, must be specially pleaded (5 Enc. Pl. & Pr. 10, and see *Savannah Electric Co.* v. *Lackens,* 12 *Ga. App.* 770-71, 79 S. E. 56) ; but even if not, still unless the evidence affirmatively establishes that the negligence of the injured party contributed to the injury, the defense of contributory negligence can not be employed to defeat the action.

7. Since the driver of an automobile is bound to use a degree of reasonable care proportioned to the danger of the instrumentality which he operates, and is bound, when traversing a much-frequented street, to anticipate the presence on the street of other persons having an equal right with himself to be there, proof that the automobile in question was suddenly turned from the course it was taking, whereby it collided with the pedestrian, to whom no signal of warning was given by the driver of the automobile, it appearing, from undisputed evidence, that the pedestrian exercised due care, was sufficient to authorize the jury to find that the negligence of the driver was the proximate cause of the injury, and to so exclude all idea of contributory negligence as to render instructions upon this subject unnecessary. See Arsenau v. Sweet, 106 Minn. 257 (119 N. W. 46), and cases cited supra.

8. The operation of an automobile at a rate of speed in excess of that prescribed by a valid municipal ordinance is negligence per se. The driver must so operate his automobile as to have its speed at all times under his control; and whenever it is necessary, for the preservation of either person or property, that the automobile should be brought to a stop, the exercise of reasonable care requires that the vehicle be stopped instantly. It is for the jury to determine from the evidence, in any case of a collision between an automobile and a pedestrian, whether it was the duty of the driver to have stopped the automobile, whether or not he endeavored to do so, and whether the failure to stop in the particular case was due to negligence.

9. The judge refused to charge that "there is no law requiring

the operator of an automobile, while properly using the streets, to sound a gong, blow a horn, or give other warning to pedestrians of its approach." Whether the use of a gong, a horn, or other warning to pedestrians is necessary in the exercise of due diligence by the driver of an automobile, and whether the failure of the driver to give these or other cautionary signals is negligence, are both jury questions, dependent for their solution upon the peculiar facts of the particular case; and for this reason the judge did not err in refusing to charge the jury as above stated. To have given the charge requested would have trenched upon the prerogative of the jury in determining what would constitute negligence or diligence in the case.

10. Exception is taken to the refusal of the trial judge to give the following instruction: "If Mr. Newnham and Mr. Mulherin were equally in the wrong, plaintiff can not recover, and your verdict must be for the defendant." Refusal to give a requested instruction is not error, unless the charge requested is in itself correct and perfect (*Macon, D. & S. R. Co.* v. *Joyner,* 129 *Ga.* 683, 59 S. E. 902) ; and although a request to charge may contain a correct abstract principle of law, it is properly refused where it may be misleading or confusing when applied to the facts of a particular case. However, so far as it was pertinent, this request to charge was covered in the general instructions of the court to the jury, and inasmuch as the instructions given were correct, the complaint that some other appropriate principle of law was not given in immediate connection therewith, is not ground for a new trial. *Central Ry. Co.* v. *Grady,* 113 *Ga.* 1046 (39 S. E. 441), and citations.

11. Even if the right of one who is injured by another, to whom he does not occupy any contractual relation, to recover damages for the injury, can be defeated by proof that the negligence of the injured party was equal to that of the tort-feasor, instead of merely being diminished in proportion to the negligence of the injured party, still the charge of the court upon this subject affords the defendant no cause for complaint. The court charged the jury: "If you believe that Mr. Mulherin [the driver of the defendant's automobile] was negligent to some extent, and you also believe that Mr. Newnham was negligent to an equal or to a greater extent, the plaintiff can not recover in this case, and your verdict shall be for

the defendant." In view of this instruction, failure of the court to charge that if the deceased and the defendant's driver were equally negligent, the plaintiff could not recover is not cause for a new trial, especially as no appropriate request to charge on the subject of equality of negligence was presented.

12. The evidence authorized the verdict, and there was no error in refusing a new trial.            *Judgment affirmed.*