Michael Baryluk
vs.
United Electric Railways Co.
} No. 87247.

### DECISION.

#### January 25, 1933.

CHURCHILL, J. Heard on motion for a new trial filed by the defendant after a verdict for the plaintiff for $14,263 in an action of negligence.

The plaintiff, a man 52 years of age, was in collision with a motor bus operated by the defendant on the Mendon Road south of Woonsocket about 7:30 P. M., February 26, 1931. At the time of the accident the night was clear, the roadway dry and free from traffic in the vicinity. The accident happened on the right hand side of the road looking south. At that point the cement portion of the road is 20 feet wide with a tarvia shoulder about 7 feet in width.

A store is situated near the scene of the accident on the right hand side with a recessed entrance and with large show windows looking out onto the scene of the accident. Within this store were three persons who testified for the plaintiff as eye witnesses.

The plaintiff went to the store, was about to open the door in the recessed entrance, saw the motor bus coming, as he testified, some 600 feet away,

and then went to the edge of the cement road. He testified that he had taken a bus at that point several times before the accident and it appeared further in testimony that this was not a regular stopping place for the bus on that particular line.

It is undisputed that the bus, travelling at a rate of between 18 and 20 miles an hour, swerved sharply to its left when a short distance from him and that he came in contact with the bus on its right hand side where the forward door is situated. The door was shut at the time.

The position of the plaintiff is described by witnesses as being near the line between the tarvia shoulder and the cement portion of the road. The plaintiff and one of his witnesses testified that he stood with one foot on the concrete and one foot on the tarvia shoulder, facing the direction in which the bus was approaching; the other two witnesses stating that he was standing on the cement close to the line of the tarvia. He stood there, according to the testimony for the plaintiff, for a period of time variously estimated as from ½ a minute to 10 to 15 seconds, the latter being the estimate of the three eye witnesses. Disregarding the somewhat illusory characterization of the time the plaintiff stood awaiting the approach of the bus, it was evident that he was there on their evidence an appreciable length of time before the collision.

The exact position of his right arm and hand, a matter deemed of importance by the defendant, is not clearly shown by the evidence.

The plaintiff, in his direct testimony, demonstrated to the jury his position in this respect. He stood with his hand raised and with his forearm parallel to his body. In rebuttal he stood before the jury with his arm extended slightly above a horizontal position. The three eye witnesses testified in substance that he had his hand raised as he stood facing the direction in which the bus was approaching.

The witnesses for the plaintiff testified that when a short distance from the plaintiff, the oncoming bus swerved sharply to the left and that the plaintiff, standing with his hand raised as a signal, was struck by the bus at the place occupied by the forward door.

The defendant argues that on the case made by the plaintiff he was guilty of contributory negligence as a matter of law. The pith of the argument is that all the plaintiff had to do to escape injury was to step back one step and all danger would thus have been avoided.

It should be remembered, in passing on the conduct of the plaintiff, that the circumstances of this accident did not unroll themselves in a succession of slowly developing stages during which the plaintiff had ample time to realize the danger, consider the situation and then take appropriate action. The bus was approaching at a rate of from 18 to 20 miles an hour and at that rate covered a distance of 30 feet in a second. It swerved sharply to the left a short distance from him and it is therefore clear that the plaintiff was obliged in this situation to appreciate the danger, make up his mind and act for his own safety all in a matter of considerably less than half a second. For all practical purposes, the sharp swing of the bus and contact with the side of the bus when it swerved were nearly simultaneous.

Has the concept of contributory negligence under the situation presented here hardened into a rule of law fatal to the plaintiff's right to recover, or is it still a question of fact for the jury under proper instructions?

A case nearly on all fours with the case at bar in *Lustik* vs. *Wallus,* 169 Minn. 313, where it was held that the question of contributory negligence was for the jury. Not so squarely in point, but showing a tendency to regard the question as one of fact for the jury, are

*Harrison* vs. *Aldrich*, 199 Ia. 168;

*Wortman* vs. *Tropp*, 202 Ill. App. 528;

*Kaphmeyer* vs. *Mehl*, 60 Atl. (N. J.), 40;

*O'Dowd* vs. *Newnham*, 80 S. E., 36 at 41 (Ga.).

It is clear law in this jurisdiction that a person using the public highway and exercising reasonable care for his own safety may assume, until he has knowledge to the contrary, that drivers of automobiles will exercise reasonable care to avoid injuring him and that they will observe the law, and that he is not negligent in acting on this presumption and regulating his conduct accordingly

*Belliveau* vs. *Bozoian*, 46 R. I. 85;

*Humes* vs. *Schaller*, 39 R. I. 519.

Under the facts and the law, the question of contributory negligence in this case was for the jury and their verdict is not against the law or the evidence in this respect.

The defendant also challenges the verdict on the ground that the physical facts show that the plaintiff ran into the side of the bus striking the forward right hand door.

The bus driver testified that he saw the plaintiff hurry out from the direction of the store towards the road; that he blew the horn on the bus; that the plaintiff did not stop but continued on his way; that when the plaintiff was 2 or 3 feet in front of the bus, he swung the bus to the left to avoid striking the plaintiff, but the plaintiff kept on moving and ran into the side of the bus.

This testimony was corroborated in part by the testimony of a passenger in the bus, who sat on the first seat on the right hand side. He did not see the plaintiff standing in the road, but noticed the sharp swerving of the bus and heard something strike the bus just back of where he was sitting. From where he sat in the bus, he could not see the forward right hand mudguard.

The three witnesses who were in the store at the time of the accident testified that the plaintiff was standing in the road very near the line between the cement and the tarvia shoulder, with his hand raised as a signal, and that the bus swerved sharply and struck him and knocked him down. On the oral testimony, obviously this was a matter for determination by the jury.

The defendant argues that the physical facts were such that this Court, under the doctrine of *Whalen* vs. *Dunbar*, 44 R. I. 136, should disregard the oral testimony of the witnesses called by the plaintiff.

In order to apply the rule of that case, the physical facts must be uncontestable. The defendant put in testimony tending to show that a person standing in the recessed doorway in a position similar to the plaintiff's could see a car coming at a certain distance from the point of the collision, and that, given the speed of the car and the fact that the plaintiff walked into the road at a point near the electric light, he could not have reached there in time to have stood there, as he testified and for the length of time it was testified he stood there, before the accident, but that the measurements taken in connection with the time which elapsed show that he must have run into the forward side of the bus.

The difficulty with the argument is that it cannot be demonstrated that the witness making the experiment occupied the identical position which the plaintiff occupied in the recessed doorway. A slight variation of the angle of vision would cause a comparatively large variation in the distance at which an approaching bus could first be seen. The exact speed at which the plaintiff crossed to the point where the accident happened is also a matter not settled beyond question.

These matters make it impossible for the defendant to apply the test in the Dunbar case to the oral evidence

presented by the plaintiff.

It was also argued that with the bus taking a sharp curve to the left, it was impossible for any portion of the plaintiff's body to have been struck by that portion of the bus occupied by the door. Much the same criticism applies to this argument as applied to the argument in regard to the comparative distance travelled by the plaintiff and the motor bus in the same length of time. The exact degree of the curve taken by the bus and the exact point at which the bus made this sharp turn to the left are matters not precisely or exactly demonstrated by the evidence. Furthermore, the expert witness produced by the defendant was obliged to admit that, given a bus of the size and weight of the bus involved in the accident, travelling at a rate of 18 or 20 miles an hour, the body of the bus would lurch or swing to its right when making a sudden curve to the left. All these were questions of fact for the jury to consider in weighing the testimony of the eye witnesses for the plaintiff.

In the opinion of the Court, on the question of negligence, the facts are such that this Court cannot interfere with the verdict in this respect and the Court rules that the verdict is sustained by the evidence.

The plaintiff at the time of the accident was employed by the defendant as a laborer with an average wage of $30 a week. He was bruised about the body but the main contention in regard to damages hinges on the question of his recovery from the fractures which he sustained on the right elbow, fractures of both bones of the left leg and of five bones in his right foot.

He was in the hospital for 7 weeks, testified that he was confined to his home for 4 months; that he has used either crutches or canes ever since and has been unable to work since the time of the accident. His physician testified that he had a good recovery from all the fractures of the bones in his arm and of the left leg but the fractures of the bones in the right foot involved the ligaments and nerves to such an extent that it was highly painful for him to use them, but that he could not find, outside of the fractures, any objective evidence which would show any reason for the complaints of severe pain on the part of the plaintiff.

Dr. Harris was appointed by the Court as a disinterested expert to examine the plaintiff at the time. He made such examination and reported orally on the witness stand. He found a slight limitation in the right arm, the plaintiff not being able to touch his right shoulder with the fingers of his right hand. Apart from that, he had completely recovered from the injury to the right arm. He further reported that he had completely recovered from the two fractures of his left leg. Furthermore, he could find no reason for pain in the right foot as a good recovery had been experienced in this respect. He further reported: "The patient walked in his bare feet and with shoes and stockings on across the floor of the examining room guardedly, but without any limp that I could determine. I might say I watched him go up and down stairs one foot after the other, or in a manner that any of us do go up and down stairs, without any noticeable limp. He used his cane at that time."

The verdict of $14,263 implies a finding of permanent injuries resulting in total disability and total permanent loss of earning capacity. The injuries were serious and painful but in view of the preponderating weight of the medical evidence, the verdict is excessive.

Unless the plaintiff within five days remits all of the verdict in excess of $6,000, a new trial is granted on all issues, otherwise denied.

For plaintiff: John R. Higgins.

For defendant: Earl Sweeney.