**32299.  GARMON v. CASSELL.**

DECIDED MARCH 4, 1949.

*J. Walter LeCraw, John H. Hudson,* for plaintiff in error.

*Houston White, W. Neal Baird, Neely, Marshall & Greene,* contra.

FELTON, J. ■ The defendant contends that only one act of negligence was proved as alleged, to wit, that the defendant was driving while under the influence of intoxicating liquor, and that that negligence was not shown to have been the proximate cause of the death. We can not agree with this contention. The jury could have found, not only that the defendant was driving while under the influence of whisky, but that he was negligent in other respects and that such other negligence was caused at least in part by his condition. The defendant testified that he stopped his car at the intersection and proceeded across it at ten miles an hour. Evidence of other witnesses showed that the defendant. traveled 25 feet after hitting the deceased before applying his brakes to the point where the tires would skid, and that the four tires of the defendant's car skidded 37 feet beyond the initial 25 feet before the car was brought to a stop. These circumstances could have been found by the jury to be inconsistent with the defendant's testimony that he stopped at the intersection and crossed it at 10 miles an hour. Furthermore, the jury could have found that the defendant had drunk more whisky than he testified he drank. He did not account for the whisky which he said remained in the bottle after he drank from it, if there was any remaining. The finding was also authorized that the defendant's bright lights were on at the time of the incident. A police officer who drove the defendant's car to his home testified that the lights shone a hundred yards in front of the car. There was no evidence that they were changed after the collision. We think that the evidence authorized the jury to find that the defendant was guilty of nearly all of the acts of negligence alleged and that they were the proximate cause of the death, and that the plaintiff's action was not defeated as a matter of law because a finding was demanded that the deceased's death was due to his failure to exercise ordinary care. We do not feel that a more detailed discussion of the facts and permissible inferences is necessary, as the material facts are set forth above.

■ The court charged the jury as follows: "I charge you that

the law requires that, upon approaching or passing any person in the roadway, or traveling any public street or highway, the operator of a motor vehicle shall at all times have the same under immediate control. I charge you that, if defendant Garmon was driving an automobile upon a public street or highway and was approaching or passing petitioner's husband in the roadway, and that at such time and place defendant Garmon failed to have said motor vehicle under immediate control, such failure would constitute a violation of law and would be negligence."

"I charge you that, if defendant Garmon was driving an automobile upon a public street or highway and. was approaching or passing petitioner's husband in the roadway, and that at such time and place defendant Garmon failed to have said motor vehicle under immediate control, such failure would constitute a violation of law and would be negligence."

One exception to these charges is that Code § 68-304 was intended to apply only to those instances where the operator of an automobile was consciously and with the knowledge of the presence of a pedestrian passing a pedestrian walking in the roadway, and that it would not be applicable where the presence of the pedestrian was not known to the operator of the automobile. This exception is without merit. The Code section applies to situations where the operator of an automobile could ascertain the presence of the pedestrian by the exercise of ordinary care. To hold otherwise would relieve the operator of an automobile from the duty to anticipate the presence of pedestrians and to exercise ordinary care in discovering and protecting them. *O'Dowd* v. *Newnham*, 13 *Ga. App.* 220 (80 S. E. 36) ; *Eubanks* v. *Mullis*, 51 *Ga. App.* 728 (181 S. E. 604) ; *Claxton* v. *Hooks*, 68 *Ga. App.* 383 (23 S. E. 2d, 101) ; *Jackson* v. *Crimer*, 69 *Ga. App.* 18 (24 S. E. 2d, 603).

Another exception is that the phrase, "under immediate control," is too vague, indefinite, and uncertain to be enforced. This court has defined the term. *Central of Georgia Ry. Co.* v. *Burton*, 33 *Ga. App.* 199 (125 S. E. 868). "The term used by the statue can not imply the constant ability to bring the car to a full stop instanter. It must mean, as the judge in effect charged, that, in approaching such a crossing, the operator of an

738

automobile shall have and keep the machine under such constant control as would enable him instantly to govern its movements, including the power to stop within a distance in which such a vehicle, in good mechanical condition, driven by a reasonably skilful driver and traveling at a lawful rate of speed, could be stopped." The court there did not define legal rate of speed, but it obviously did not mean just any speed under the maximum legal limits, but meant the speed which was proper under existing surrounding circumstances. In the last analysis, immediate control means reasonable control. There is a good statement of the duty of an operator of a motor vehicle in 42 Corpus Juris, "Motor Vehicles," p. 920. "It is the duty of the operator of an automobile to keep his car under reasonable control, so that he may avoid collisions with, and injury to, other users of the highway who are themselves exercising reasonable care." Where a statute provides a general rule of conduct, amounting to a requirement to exercise ordinary care, it is not error to charge that the failure to do so will constitute negligence per se, because it is really superfluous to mention negligence per se when proof of failure to exercise ordinary care as a matter of fact is all that is required. As to such a charge, see *Hollomon* v. *Hopson*, 45 *Ga. App.* 762 (166 S. E. 45).

As the charge was essentially in the wording of the statute, it was not error not to explain the meaning of "immediate control," in the absence of a timely request therefor.

The court charged the jury as follows: "I charge you that the law provides that no person shall operate a motor vehicle upon any public street or highway while under the influence of intoxicating liquors. If defendant Garmon operated an automobile upon a public street or highway at the time and place alleged, and if you find that while doing so he was under the influence of intoxicating liquors, such act would constitute a violation of law and would be negligence." The exception to this charge is that it should have been qualified by the further charge that the driving while under the influence of intoxicating liquors must have in some way contributed to the injuries before the defendant could be found liable for such act. Assuming that this assignment of error is sufficient, the charge was correct as far

as it went and was amplified by the charge shown in the next division of this opinion.

■ The court further charged: "If you should believe that the defendant, Jesse T. Garmon, was operating the automobile under the influence of intoxicating liquor at the time John W. Cassell was injured, as alleged in the petition, but if you believe that Garmon's act of so operating said automobile was not the proximate cause of the injury to Mr. Cassell, but that said injury would have occurred regardless of Garmon's said alleged act, then no recovery can be given to the plaintiff based merely upon Garmon's alleged act of operating the automobile under the influence of intoxicating liquor." The exception to this charge is that the words, "but that said injury would have occurred regardless of Mr. Garmon's alleged act," were confusing to the jury in that these words were insufficient to inform the jury that the court had reference to the influence of intoxicating liquors and not to any other act of Garmon's at the time. We do not think that the jury was confused by this charge. The judge was charging at the time about only one act, that of driving while under the influence of intoxicating liquors, and it does not seem reasonable to think that the jury would construe the words above quoted as referring to other acts about which the judge was not speaking at the time.

■ It was not error to fail to charge the jury that the plaintiff could not recover if the deceased could have avoided the negligence of the defendant by the exercise of ordinary care, in the absence of evidence that the deceased could have discovered the negligence of the defendant and could have avoided it by the exercise of ordinary care. Grounds 4, 5, and 6 of the amended motion are without merit.

■ Ground 7 of the amended motion assigns error on the court's permitting the plaintiff's attorney to call to the witness stand a bookkeeper of the defendant C. M. Hall. One complaint is that the word "agent" as contained in the amendment to Code, § 38-1801 (Ga. L. 1947, p. 568) refers only to an agent who was an agent of the party with relation to or who had some connection with the transaction under investigation. We find no support for such a contention. The act itself makes no limitation.

In this case the witness was evidently in the courtroom and available to the defendant Hall as a witness. Whether the party could subpœna an opposite party's agent and put him on the stand for purposes of cross-examination, is not before us for decision. Furthermore, the testimony elicited from the witness had relation to a matter in litigation and was not harmful to the defendant Garmon. His testimony identified checks and books showing various payments from the defendant Hall to the defendant Garmon, showing payments of $49.50 nearly every week from April 4, 1947 to December 26, 1947, also the following other payments. December, 1946, $250; February 28, 1947, $198; March 31, 1947, $247.50; May 2, 1947, $640; December 31, 1947, $33.03; January 1, 1948, $198. The contention is that the testimony was prejudicial to Garmon because it showed substantial payments to Garmon, which might have caused the jurors to believe that he was a man of sufficient financial means to cause them to return a greater verdict against him than they otherwise might have done. This ground is without merit.

■ Ground 8 of the amended motion complains of the refusal of the court to permit counsel for Garmon to cross-examine the bookkeeper of Hall, who was put up for cross-examination by the plaintiff. As held in division 6, it was not error to refuse the privilege of cross-examination as a matter of right on the theory that the witness was the plaintiff's. Under the facts of this case, neither was it such an error for the judge to refuse the permission in the exercise of his discretion as will require the grant of a new trial, especially when the witness gave no testimony on the question of the liability of the defendant Garmon. *Davis* v. *Wright*, 194 *Ga.* 1 (21 S. E. 2d, 88).

■ Ground 9 of the amended motion complains of the failure of the court, upon the mere oral request of counsel for the defendant Garmon, to notify the jury that the defendant Garmon had no insurance, in view of the fact that the jury had been qualified as to whether they were employees in, or stockholders of the insurance company which carried the defendant Hall's insurance, and whether they were related to the stockholders thereof. This ground is without merit. In such a case as this, the question of insurance is utterly immaterial insofar as the merits of

the case are concerned. The jury did not know the provisions of the policy, whether it protected Hall to the extent of $100 or $10,000, and there is no reason to believe that the jury would have rendered a verdict against Hall beyond the limit of his insurance policy, and would not have rendered a verdict against Garmon beyond the limit of Hall's insurance policy, if it had known that Garmon was not covered by insurance. If the jury would have done such a thing, they necessarily would have had to render a smaller verdict against Hall, as the amount as to each had to be the same. If, as some courts have held, the mention of insurance is injurious to the defendant having it, and incidentally to joint defendants who do not have it, the question can be legally injected into the case by the qualification of the jury and so far no way has been devised to prevent it. For a court to instruct a jury that one defendant is not insured, would amount, at least, to an intimation that it would be proper for them to consider that fact as a legal reason why a smaller verdict might be rendered against both defendants simply because one of the defendants had no insurance. The sooner juries are informed what the nature of the insurance coverage is, and that it is dangerous for them to regulate the size of their verdicts by the fact of insurance when they do not know the amount of the coverage, through an erroneous idea that the insurance company is obligated to pay the damages irrespective of the defendant insured's negligence, the sooner this troublesome question will approach a solution. We do not think it idle to believe that a jury which is apprised of the true situation, will refuse to gamble with the rights of a litigant or unwittingly reward a plaintiff with unmerited damages regardless of the rights of a defendant or insurance company.

The court did not err in overruling the motion for a new trial.

*Judgment affirmed. Sutton, C. J., and Parker, J., concur.*