### 32811. SAPP *v.* SHUMATE.

Decided April 7, 1950. Rehearing denied April 28, 1950.

*C. H. Porter, Jack Rogers, Wright, Rogers, Magruder & Hoyt,* for plaintiff in error.

*E. J. Clower, Horace Clary,* contra.

Worrill, J. Mrs. H. M. Shumate filed suit against C. J. Sapp for damages on account of the death of her husband alleged to have resulted from the defendant's negligence in operating his automobile along a highway and striking the deceased, who was a pedestrian walking in the same direction in which the defendant was traveling. The defendant answered denying the material allegations of the plaintiff's petition respecting the manner in which her husband was killed, denying liability, and alleging that the deceased, by the exercise of ordinary care, could have avoided his injuries. No demurrer was filed. The case was submitted to a jury, a verdict for the plaintiff for $15,000 was returned, and the defendant filed his motion for a new trial on the general grounds only. To the order overruling that motion the defendant excepted and filed his bill of exceptions to this court.

The evidence tended to show that the deceased, a man 52 years old, on the afternoon of December 31, 1948, prior to his death at about 7:15 or 7:30 p. m., was seen in Rome, Georgia,

at a tavern where, from the conflicting evidence, it appears that he consumed from one bottle of beer to several, one witness testifying that he was drinking beer practically the entire 1 and 1/2 to 3 hours he was in the establishment and was drunk at about 3 o'clock that afternoon. However, there was no witness who saw the deceased after 3 o'clock who testified that he was drunk, and in regard to this matter, three witnesses who saw him just before he was killed, testified that he did not appear, at that time, to be intoxicated. The deceased was next accounted for, under the evidence, at a firecracker stand just outside of the city limits of Rome, located on the highway not far from where he met his death. This was at about 7 p. m. The evidence tended to show that the deceased was at the fireworks stand for a short while and then proceeded down the highway in a westwardly direction toward his home; that shortly thereafter an automobile passed the stand traveling at a very rapid rate of speed, such as to cause the two witnesses, the operators of the stand, to comment upon its speed; that in less than five seconds after the automobile passed the fireworks stand the witnesses heard a crash or thud that sounded as if the automobile had struck an object, and that the automobile was observed to slow down, stop, turn around and return to the fireworks stand, that the driver of the automobile obtained the assistance of one of the operators of the stand, stating that he thought he had hit something and that one of the witnesses proceeded with the driver down the road to a point where the body of the deceased was found some 18 feet from the edge of the roadway and in a badly battered and mangled condition. The witnesses stated that, though they did not know the driver of the automobile at that time, he was later identified to them as the defendant. The evidence and the exhibits in the record show that the defendant's automobile was severely damaged by the impact with the body of the deceased, and witnesses testified that there was evidence that the deceased was hit some 216 feet along the road from the point where the body was found. Witnesses further testified that they did not hear brakes applied, or hear a horn sounded, and there was no evidence found on the pavement or in the road indicating that the defendant had applied his brakes or attempted to stop prior to striking the deceased. The evidence

showed that the road at the point where the deceased was struck was 22 feet wide, with graveled shoulders on each side 8 feet wide, that the road was practically straight at that point, and that there was no obstruction or other thing in the road to prevent the defendant seeing the deceased.

The defendant admitted that his automobile struck the deceased, but he denied that he had been driving faster than 45 miles per hour. He testified that his automobile was a 1948 Chevrolet, that he had bought it the previous June, that his headlights were good and his brakes good, but he testified that he did not see the deceased in the road before he hit him, and did not know until after he made an investigation upon. returning to the scene of the injury what he had hit. The sole question presented by the bill of exceptions assigning error on the overruling of the motion for new trial on the general grounds is whether the evidence authorized the verdict.

Questions of fact, of negligence and diligence, of contributory negligence, and of cause and proximate cause, are matters peculiarly for the jury, and the courts should decline to answer such questions on demurrer or motion or otherwise except in plain, palpable and indisputable cases. *Eubanks* v. *Mullis*, 51 *Ga. App.* 728, 730 (181 S. E. 604). "One of the duties incumbent upon one who operates an automobile (and this is a duty incumbent upon the driver of any vehicle) is that of anticipating the presence upon the highway of other persons having rights to be there equal with his own; and if, by failure to discharge this duty, the right of another is disregarded and injury results, the owner of the automobile is liable for any consequent damage. The driver of an automobile is bound to exercise reasonable care in anticipating the presence of pedestrians upon the streets of a city, or upon rural highways, as well as to exercise reasonable care to the end that he does not injure them after he is aware of their presence. . . The pedestrian, like the driver of an automobile, in the exercise of ordinary care for his own safety and for the safety of others, is required to anticipate the presence of persons and vehicles upon the highway; but it can not be said that the duty which is upon the pedestrian is as urgent as that devolving upon the driver of an automobile; for the foot-passenger's action or in-

action in the premises is far less important to the other users of the highway. The impact of the body of a pedestrian, absorbed in his own meditations, upon a passer-by, might be measurably uncomfortable, but it would seldom be hazardous to either life or limb, whereas the impact of an automobile in motion while the driver is asleep might cause as certain death as if the injured person had been wilfully pursued and wantonly crushed. The pedestrian and the automobile have equal rights upon the highway, but their capacity for inflicting injury is vastly disproportioned. It follows also from this that the driver of an automobile can not be said to be using the highway within his rights, or to be in the exercise of due care, if he takes advantage of the force, weight, and power of his machine as a means of compelling pedestrians to yield to his machine superior rights upon the public highway designed for the use of all members of the public upon equal terms." *O'Dowd* v. *Newnham,* 13 *Ga. App.* 220 (2), 226 (80 S. E. 36). "A pedestrian is not bound to be continually looking and listening to ascertain if auto-cars are approaching, under penalty that if he fails to do this and is injured, it must be presumed from this fact alone that he was negligent." *O'Dowd* v. *Newnham,* supra, p. 228. *Eubanks* v. *Mullis,* supra; *Claxton* v. *Hooks,* 68 *Ga. App.* 383, 385 (23 S. E. 2d, 101). Under these few simple rules of law, and under the evidence adduced on the trial of this case, the defendant was bound to anticipate the presence of the plaintiff's husband in the roadway and to. exercise ordinary care to avoid striking him or doing him injury after his presence was discovered or should have been known to the defendant, and it was for the jury to say who and what and whose negligence under all the facts, proximately caused the death of the plaintiff's husband.

The plaintiff in error cites three cases upon which he relies, and his contention seems to be that, since this case depended on circumstantial evidence, the evidence was not such as to exclude every other reasonable hypothesis as to how the deceased was killed save by the negligence of the defendant, and for this reason was insufficient under the rules affecting cases dependent on circumstantial evidence. We do not think that this position is tenable. The evidence showed beyond a shadow

of a doubt that it was the defendant's automobile that struck the deceased. In fact the defendant admitted this from the witness stand. Therefore, there was no question as to what killed the deceased, and this phase of the case distinguishes it from the case of *Georgia Railway & Elec. Co.* v. *Harris*, 1 *Ga. App.* 714 (57 S. E. 1076), one of the cases relied on by the defendant. In that case the plaintiff sued for damages for injuries to his horse alleged to have been inflicted by the running of one of the defendant's cars. Without going into a detailed summary of the evidence in that case, it is sufficient to say that it showed that no person saw the defendant's car strike the plaintiff's horse, and there were no physical marks or evidence even tending to support the theory that it had struck the horse, and in fact proof of all the elements of the case rested on circumstantial evidence. Such is not this case. In *Gray* v. *Jackson*, 53 *Ga. App.* 658 (187 S. E. 229), another of the cases relied upon by the defendant, it appeared that as in the *Harris* case, the evidence was wholly circumstantial. This fact alone distinguishes that case from the case at bar. However, a review of the facts appearing therein showed that the plaintiff's son was killed upon a highway; that there was no eye-witness, and no person, not even the driver of the defendant's truck saw the deceased when he collided with it. There were no marks on the truck indicating what part of the truck had struck the deceased, and there was no evidence even tending to indicate that the truck was exceeding the speed limit. These facts distinguish that case from the case at bar, for in this case, while no witness, not even the defendant himself, testified to seeing the deceased when he was struck by the defendant's car, there was abundant physical evidence connecting the defendant's car with the striking of the deceased. The evidence as to the battered and mangled condition of the deceased's body and the battered condition of the defendant's automobile with blood and brains and flesh scattered over the hood, fender and windshield, and the trail of blood and flesh extending for some 216 feet down the road and 18 feet into an adjacent field all amply spoke, not only of the fact of the defendant's car having struck the deceased, but also of the excessive speed at which the defendant's automobile was being operated when it admittedly

struck the deceased, and this was ample evidence from which the jury could infer negligence and causation, and fix the blame upon the defendant.

The case of *Armour & Co.* v. *Gulley,* 61 *Ga. App.* 414 (6 S. E. 2d, 165), relied on by the defendant, is also distinguishable upon its facts from the instant case for the simple reason that in that case there was no evidence that connected the potted meat packed and sold by the defendant and purchased and consumed by the plaintiff with the plaintiff's illness.

For these reasons, the verdict for the plaintiff was authorized, and the trial court did not err in overruling the motion for new trial.

*Judgment affirmed.   Sutton, C. J., and Felton, J., concur.*